# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00106-CR

---

**William Black, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 450TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-18-904301, THE HONORABLE BRAD URRUTIA, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant William Black guilty of one count of aggravated sexual assault and two counts of aggravated assault all arising out of a single encounter between appellant and the victim, Jane Doe. *See* Tex. Penal Code §§ 22.02(a), 22.021(a). Appellant elected to have the trial court decide his punishment, and the court assessed his punishment, enhanced pursuant to the habitual offender provision of the Penal Code, at confinement for twenty-five years in the Texas Department of Criminal Justice for each offense, ordering the sentences to run concurrently. *See* Tex. Code Crim. Proc. art. 37.07(2)(b); Tex. Penal Code §§ 3.03(a), 12.42(d). On appeal, appellant complains about the imposition of multiple punishments for the same offense in violation of the prohibition on double jeopardy. We affirm the trial court's judgments of conviction.

## BACKGROUND

The evidence at trial showed that through Backpage, an online escort service, appellant arranged to have a "car date" with nineteen-year-old Jane Doe, who was engaged in prostitution. They agreed to meet at a bar in North Austin and that appellant would pay Doe "upfront." As Doe was driving to the "date," the two talked by cell phone. At the last minute, appellant changed the meeting location and directed Doe to an isolated area under a bridge.

Once she arrived at that location, Doe followed appellant's instructions to act out his fantasy or "fetish." She parked her car, got out and put a condom on the roof of the car, got into the back seat, removed her clothes, and began touching herself. Appellant approached the car on the passenger side and put on the condom while he stood outside of the car watching Doe through the front passenger window. He then opened the backseat passenger door, said she was beautiful, and "hovered over" her "as if he was going to insert his penis in [her] vagina." At that point, Doe asked for her money. Appellant said that he would pay her "afterwards," but she insisted on payment first. According to Doe, appellant appeared to agree to her payment request and reached into his pocket. But instead of getting money, he pulled out a folding knife.

Doe testified that appellant unfolded the knife, and "it was in [her] face" at first. Appellant then held the knife up to her throat and then to her ribs. A struggle over the knife ensued. Doe explained that she was "throwing [her] fists, kicking" and "fighting the best way [she] could." During the struggle, appellant lifted himself up and "slammed" his elbow into Doe's thigh, breaking her thighbone.

After appellant broke her leg, Doe stopped fighting. Appellant "got on top of [her] and forced his penis in [her] vagina," "thrusting" into her while he held the knife to her throat. Doe said that she feared that he would kill her when he was finished. When appellant

2

was finished (Doe was unsure if he ejaculated), he backed out of the car, and Doe attempted to grab the knife. Appellant "yanked" the knife, cutting Doe's hand.

After appellant left the car, Doe pulled herself to the front seat and locked the doors so appellant could not get back inside the car. She called her boyfriend, who did not answer, and her sister because she was "so in shock" she did not feel like she could talk to 911 and "just needed to go where comfort was."[1] She was also scared and nervous because she was engaged in prostitution and thought the police "wouldn't come as quick as [she] needed them to because of prostitution" and "probably wouldn't think it was actually rape." Doe managed to drive, still naked, first to a corner store and then to her sister's house. Her sister then got in Doe's car and drove her to the hospital.

In addition to her broken leg, Doe sustained multiple injuries during the encounter with appellant, including a large "gash" on her upper inner thigh, a smaller cut on her upper thigh, and a cut to her hand at the base of her thumb—which all required multiple sutures—along with several smaller cuts to some of her fingers and an injury and possible fracture to her pinky finger. Her fractured femur required orthopedic surgery for an intramedullary nail stabilization—a titanium rod placed in the middle of the femur with screws above and below the break to lock the bone in place and give it a chance to heal. It took Doe several months to regain the ability to walk, first with a walker and then with crutches. At the time of trial, one year later, she walked with a limp. She explained that "a lot of things are harder now." She still experienced leg pain at times and has limitations on her leg movement—she cannot do "squats," cannot run without painful "consequences afterwards," and cannot wear high heels. In addition,

---

[1] Doe explained that the call to her sister was a "Facetime call" because she "couldn't call her over the phone to tell her what happened" but needed to show her sister "all the blood on [her] hands" so she could know it was "serious."

3

due to the pinky-finger injury and scar tissue on her hand, Doe cannot bend her pinky and is "constantly jamming" it because "it always stays up," she cannot make a fist, and she has difficulty lifting things with that hand.

Appellant was arrested and subsequently charged by a three-count indictment with one count of aggravated sexual assault and two counts of aggravated assault. The case proceeded to trial, and the jury found appellant guilty of all three offenses. After finding the enhancement allegations of prior sequential felony convictions for robbery and theft to be true, the trial court assessed appellant's punishment at twenty-five years' imprisonment for each offense and ordered the sentences to run concurrently. Appellant now appeals.

## DISCUSSION

In his sole point of error, appellant asserts that his convictions for both aggravated sexual assault in Count I and aggravated assault in Count II violate the prohibition against double jeopardy because he was subjected to multiple punishments for the same offense.

As relevant here, the Double Jeopardy Clause of both the United States and Texas Constitutions forbid multiple punishments for the same offense in a single prosecution. *See* U.S. Const. amend. V; Tex. Const. art. 1, § 14; *see also Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018); *State v. Donaldson*, 557 S.W.3d 33, 41 (Tex. App.—Austin 2017, no pet.). Generally, to preserve a multiple-punishments double-jeopardy claim for appellate review, a defendant must object at or before the time the charge is submitted to the jury. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). An appellate court must consider the merits of a defendant's multiple-punishments double-jeopardy claim raised for the first time on appeal "when (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the

4

face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interests." *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014) (citing *Gonzalez*, 8 S.W.3d at 643); *see Langs v. State*, 183 S.W.3d 680, 682 (Tex. Crim. App. 2006) ("[T]he face of the trial court record must clearly show a double jeopardy violation before a defendant may successfully raise a 'multiple punishment' double jeopardy claim for the first time on appeal."). Appellant raises his double-jeopardy claim for the first time on appeal. Therefore, we must evaluate whether the face of the trial record clearly shows a double-jeopardy violation. *See Garfias*, 424 S.W.3d at 58; *Langs*, 183 S.W.3d at 687.

The threshold question in evaluating a double-jeopardy claim is whether the defendant is being punished for the "same offense." *State v. Perez*, 947 S.W.2d 268, 270 (Tex. Crim. App. 1997) (citing *United States v. Dixon*, 509 U.S. 688, 696 (1993)); *Donaldson*, 557 S.W.3d at 41. The Court of Criminal Appeals has explained that there are two relevant inquiries in a double-jeopardy analysis when considering whether the offenses at issue are "the same": legal sameness and factual sameness. *Ex parte Castillo*, 469 S.W.3d 165, 172 (Tex. Crim. App. 2015); *see Aekins v. State*, 447 S.W.3d 270, 283 (Tex. Crim. App. 2014) (Keller, P.J., concurring) ("For offenses to be the 'same' for double-jeopardy purposes, they must be the same both in 'law' and in 'fact.'"). "The legal-sameness inquiry depends on only the pleadings and statutory law—not the record—to ascertain whether two offenses are the same." *Castillo*, 469 S.W.3d at 172. If the offenses are legally the same, the next step is to determine whether the offenses are factually the same. *Id.* at 169; *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015). "The factual-sameness inquiry requires a reviewing court to examine the entire record to determine if the same offenses have been alleged." *Castillo*, 469 S.W.3d at 172. "To

prevail on a double jeopardy claim, the claimant must prove both legal sameness and factual sameness." *Id.* at 169.

A multiple-punishments double-jeopardy claim arises under two scenarios: (1) in the context of lesser included offenses, where the same conduct is punished under both a greater and a lesser included offense, and (2) when the same conduct is punished under two distinct statutes where the legislature intended for the conduct to be punished only once. *Garfias*, 424 S.W.3d at 58; *Langs*, 183 S.W.3d at 685. "[T]he true inquiry in a multiple-punishments case is whether the Legislature intended to authorize the separate punishments." *Garfias*, 424 S.W.3d at 58 (citing *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999)); *see Stevenson v. State*, 499 S.W.3d 842, 850 (Tex. Crim. App. 2016) (explaining that in multiple-punishments case, "the double-jeopardy analysis hinges on whether the Legislature intended multiple punishments").

"There are two ways in which legislative intent can be ascertained: by analyzing the elements of the offenses in question, or by identifying the appropriate 'unit of prosecution' for the offenses." *Garfias*, 424 S.W.3d at 58; *see Ex parte Hawkins*, 6 S.W.3d 554, 557 n.8 (Tex. Crim. App. 1999) (noting distinction between "units" test and "elements" test). The Court of Criminal Appeals "has held that an 'elements' analysis is appropriate when the offenses in question come from different statutory sections, while a 'units' analysis is employed when the offenses are alternative means of committing the same statutory offense."[2] *Garfias*, 424 S.W.3d

---

[2] The unit of prosecution is relevant in an elements analysis but only in the abstract:

> In determining whether offenses are the same or different under such an inquiry, the *Blockburger* test sets out the starting presumption, but, at least in the multiple-punishments context, that presumption can be rebutted by other indicia clearly manifesting a legislative intent to the contrary. Under *Blockburger*,

at 58 (internal citations omitted); *see Loving v. State*, 401 S.W.3d 642, 645 (Tex. Crim. App. 2013) (explaining that when charged conduct involves multiple offenses in different statutory provisions, elements inquiry requires courts to compare elements of offenses under *Blockburger* same-elements test, using cognate-pleadings approach). In this case, appellant complains of convictions stemming from different statutory provisions, so we conduct an "elements" analysis to determine whether the offenses are the same and multiple-punishments principles have been violated. *See Garfias*, 424 S.W.3d at 58.

The starting point of an "elements" analysis is the "same-elements" test set forth in *Blockburger v. United States*. *Philmon v. State*, 609 S.W.3d 532, 535 (Tex. Crim. App. 2020); *Garfias*, 424 S.W.3d at 58; *see Blockburger v. United States*, 284 U.S. 299, 304 (1932). Under that test, "two offenses are not the same if 'each provision requires proof of a fact which the other does not.'" *Philmon*, 609 S.W.3d at 535 (quoting *Bien*, 550 S.W.3d at 184); *see Blockburger*, 284 U.S. at 304. In Texas, the *Blockburger* "same-elements" test is informed only by the pleadings, and a reviewing "court may not consider the evidence presented at trial" to

---

"where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." In the multiple[-]punishments context, if the offenses have the same elements under *Blockburger*, then an analysis can occur under *Missouri v. Hunter* to determine whether the Legislature nevertheless intended to allow multiple punishments. Conversely, if the offenses have different elements under *Blockburger*, then an analysis can occur under *Ex parte Ervin* to determine whether the Legislature nevertheless intended the offenses to be treated as the same. The *Hunter/Ervin* analysis is part of the elements aspect of Double Jeopardy law. The allowable unit of prosecution prescribed for the offenses is a relevant consideration under an *Ervin* analysis, but only in the abstract, in an effort to determine whether, under the law and the charging instrument, the offenses are considered to be the same elementally.

*Ex parte Denton*, 399 S.W.3d 540, 548–49 (Tex. Crim. App. 2013) (Keller, P.J., concurring) (internal citations omitted).

7

make the determination. *Philmon*, 609 S.W.3d at 535–36; *Bien*, 550 S.W.3d at 184. "If both offenses, as pleaded, have different elements under the *Blockburger* test, a judicial presumption arises that the offenses are different for double jeopardy purposes, and the defendant may be convicted and punished separately for each offense." *Philmon*, 609 S.W.3d at 535; *accord Bien*, 550 S.W.3d at 184–85. "That presumption, however, can be rebutted if it can be shown that the Legislature clearly intended only one punishment for both offenses." *Philmon*, 609 S.W.3d at 535; *accord Bien*, 550 S.W.3d at 185.

Appellant argues that his Count II aggravated-assault conviction is for the "same offense" as the aggravated-sexual-assault conviction because the "conduct as alleged in Count II, aggravated assault causing serious bodily injury, and in Count III [sic], causing bodily injury and using or exhibiting a deadly weapon are acts that are part and parcel of the aggravated sexual assault."[3] However, simply because an individual engaged in only one "culpable act" does not mean he is precluded from conviction and punishment for more than one offense. *Philmon*, 609 S.W.3d at 535; *see United States v. Dixon*, 509 U.S. 688, 704 (1993) (rejecting "same conduct" test of *Grady v. Corbin*, 495 U.S. 508 (1990)).

Under the "same elements" test, "lesser-included offenses are legally the same as a greater offense, and are wholly subsumed by the elements of the greater offense, unless the potential lesser-included offense requires proof of a fact not required to establish the greater

---

[3] In his brief, appellant mistakenly refers to the aggravated-assault count as separate counts (Count II and Count III). However, the conduct he references—"aggravated assault causing serious bodily injury" and "causing bodily injury and using or exhibiting a deadly weapon"—are the alternative manners and means that were charged in the two paragraphs of Count II. The aggravated assault charged in Count III alleged that appellant "intentionally or knowingly threaten[ed] Jane Doe with imminent bodily injury" and "used or exhibited a deadly weapon, a knife, during the commission of the said assault." *See* Tex. Penal Code §§ 22.01(a)(2), 22.02(a)(2). Appellant does not assert a double-jeopardy violation as to the conviction for the Count III aggravated assault.

8

offense." *Castillo*, 469 S.W.3d at 168–69; *see Brown v. Ohio*, 432 U.S. 161, 168 (1977); *see also* Tex. Code Crim. Proc. art. 37.09(1). To determine if an offense is a lesser-included offense of another, courts employ the cognate-pleading approach, which requires the court to compare the elements of the greater offense as pled to the statutory elements of the potential lesser-included offense in the abstract. *Castillo*, 469 S.W.3d at 169 (citing *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007)); *see Bien*, 550 S.W.3d at 185. This analysis is a legal question and does not depend on the evidence offered at trial. *Castillo*, 469 S.W.3d at 169; *Hall*, 225 S.W.3d at 535.

Count I of the indictment in this case, which charged appellant with first-degree aggravated sexual assault, alleged that appellant intentionally or knowingly caused the penetration of Doe's sexual organ by his sexual organ without her consent and, "in the course of the same criminal episode" either used or exhibited a deadly weapon, a knife, or caused serious bodily injury to her "by breaking her leg." *See* Tex. Penal Code § 22.021(a)(1)(A)(i), (2)(A)(i), (iv). Count II, which charged appellant with second-degree aggravated assault, alleged that appellant intentionally, knowingly, or recklessly caused bodily injury to Doe while using or exhibiting a deadly weapon, a knife, or, in the alternative, that appellant intentionally, knowingly, or recklessly caused serious bodily injury to Doe "by striking and by kicking [her] leg." *See id.* §§ 22.01(a)(1), 22.02(a)(1)–(2). The record reflects that both counts were based on appellant's encounter with Doe during their "car date."[4]

---

[4] Ordinarily, when separate theories for an offense are submitted to the jury disjunctively in the jury charge, a double-jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double-jeopardy violation and there is sufficient evidence to support that valid theory. *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez v. State*, 8 S.W.3d 640, 641–42 (Tex. Crim. App. 2000). The fact that the jury's verdict could have relied on a theory that would violate the Double Jeopardy Clause is not

Appellant's double-jeopardy claim is based on the inclusion of both aggravating factors for aggravated assault—the use or exhibition of a deadly weapon and the causing of serious bodily injury—as aggravating elements of the aggravated-sexual-assault offense.

However, "simply because there is a substantial overlap in proof required for both offenses does not mean the offenses are the same for double jeopardy purposes." *Philmon*, 609 S.W.3d at 537; *see Ex parte McWilliams*, 634 S.W.2d 815, 824 (Tex. Crim. App. 1980) ("At trial there may be a substantial overlap in the proof of each offense; however, it is the separate statutory elements of each offense which must be examined under [the *Blockburger*] test."). Appellant's argument overlooks a critical distinction between the two offenses: one is a "nature of conduct" offense; the other is a "result of conduct" offense. As a result, "each provision requires proof of a fact which the other does not." *See Bien*, 550 S.W.3d at 184 (quoting *Blockburger*, 284 U.S. at 304).

Aggravated sexual assault "is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types." *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999); *see Gonzales v. State*, 304 S.W.3d 838, 848 (Tex. Crim. App. 2010) (explaining that "the aggravated sexual assault statute defines a 'conduct-oriented' crime"); *Huffman v. State*, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008) (observing that sex offenses are "nature of conduct crimes"). "When 'specific acts are criminalized because of their very

sufficient to show a constitutional violation clearly apparent on the face of the record. *Langs*, 183 S.W.3d at 687; *Gonzalez*, 8 S.W.3d at 643.

Here, the alternative theories of the Count II aggravated assault were submitted disjunctively to the jury. However, in the jury charge, the trial court required the jury to unanimously agree on the aggravating factor for the Count I aggravated sexual assault, and the jury verdict form indicates that the jury unanimously agreed that appellant committed aggravated sexual assault both "[b]y use or exhibition of deadly weapon" and "[b]y causing serious bodily injury to Jane Doe by breaking her leg."

nature, [the] culpable mental state must apply to committing the act itself.'" *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) (quoting *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989)). Therefore, the Count I aggravated-sexual-assault charge, with either aggravating factor (using or exhibiting a deadly weapon or causing serious bodily injury), required proof that appellant intentionally or knowingly penetrated Doe's sexual organ with his penis without her consent. The Count II aggravated-assault charge did not require proof of that fact.

On the other hand, aggravated assault with the underlying crime of assault causing bodily injury—the aggravated assault charged in Count II—is a result-oriented offense. *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008); *see Garfias*, 424 S.W.3d at 60. "[U]nspecified conduct that is criminalized because of its result requires culpability as to that result." *Price*, 457 S.W.3d at 441 (quoting *McQueen*, 781 S.W.2d at 603). "In the context of aggravated assault, the 'single criminal act' requiring a culpable mental state is the act of 'causing bodily injury.'" *Rodriguez v. State*, 538 S.W.3d 623, 629 (Tex. Crim. App. 2018) (citing *Landrian*, 268 S.W.3d at 537–39). Thus, the Count II aggravated assault, with either aggravating factor, required proof of appellant culpably causing bodily injury to Doe— his intentional, knowing, or reckless infliction of bodily injury to her. The Count I aggravated-sexual-assault charge did not require proof of that fact.

Implicit in appellant's argument is the contention that both offenses required proof that appellant culpably—that is, intentionally, knowingly, or recklessly—caused serious bodily injury to Doe. However, while the serious-bodily-injury aggravating factor for both offenses uses the language "cause serious bodily injury," the Court of Criminal Appeals has explained that "[i]n the context of an offense that otherwise does prescribe a culpable mental

11

state, the lack of express language requiring an additional *mens rea* with respect to other elements is a 'compelling' indication that the Legislature did not intend an additional culpable mental state." *White v. State*, 509 S.W.3d 307, 311 (Tex. Crim. App. 2017); *see Rodriguez*, 538 S.W.3d at 628 (reiterating that, short of explicitly dispensing with culpable mental state, prescription of mental state as to one element and not as to others is "perhaps the strongest indicator of the Legislature's intent [to dispense with mental state as to those other elements] that one may find").

For that reason, the Court of Criminal Appeals has concluded that aggravated assault with serious bodily injury—that is, aggravated assault with the underlying offense of assault causing bodily injury with the aggravating factor of serious bodily injury—does not require a culpable mental state with respect to the element of serious bodily injury. *Rodriguez*, 538 S.W.3d at 627–29; *see id.* at 629 ("Whether a deadly weapon is utilized or serious bodily injury results, '[i]t is still the same single criminal act and still the same single bodily injury to the victim.'" (quoting *Landrian*, 268 S.W.3d at 539)). Similarly, while one of the aggravating factors for the aggravated sexual assault charged here required proof that appellant caused serious bodily injury to Doe, no culpable mental state is associated with the aggravating factor of causing serious bodily injury in the aggravated-sexual-assault statute.[5] Given the lack of express

---

[5] Specifically, for the Count I offense charged in this case, with regard to that aggravating factor, the aggravated-sexual-assault statute provides:

    (a)    A person commits an offense:
        (1)    if the person:
            (A)    intentionally or knowingly:
                (i) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; [and]

        . . .

12

language in the aggravated-sexual-assault statute requiring a mental state with respect to causing serious bodily injury, the Count I aggravated sexual assault did not require proof that appellant culpably—that is, intentionally, knowingly, or recklessly—caused serious bodily injury to Doe. Contrary to appellant's implicit contention, neither of the offenses required proof that appellant intentionally, knowingly, or recklessly caused serious bodily injury to Doe.

In sum, in comparing the elements of the two offenses, the Count I aggravated sexual assault, with either aggravating factor, required proof of a sexual act (that appellant intentionally or knowingly penetrated Doe's sexual organ with his penis without her consent) that the Count II aggravated assault, with either aggravating factor, did not. Further, the Count II aggravated assault, as charged in either paragraph, required proof of a culpably injurious act (that appellant intentionally, knowingly, or recklessly caused bodily injury to Doe) that the Count I aggravated sexual assault, with either aggravating factor, did not. Therefore, after applying the *Blockburger* "same elements" test, because the two offenses, as pleaded, have different elements and because the potential lesser-included offense of aggravated assault in Count II requires proof of a fact not required to establish the charged offense of aggravated sexual assault, we presume that the charged offenses are not the same offense for double-jeopardy purposes. *See Philmon*, 609 S.W.3d at 536; *Bien*, 550 S.W.3d at 185; *Benson*, 459 S.W.3d at 72.

---

    (2)     if:
         (A)    the person:
                 (i) causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode; . . .

Tex. Penal Code § 22.021(a). The statute prescribes a mental state for the criminalized conduct of "penetration of the . . . sexual organ of another person by any means, without that person's consent" but prescribes no mental state for the aggravating element of "caus[ing] serious bodily injury."

13

Once a presumption is raised that offenses are different offenses under the *Blockburger* "same-elements" test, a court considers a non-exclusive set of factors listed in *Ex parte Ervin* to determine whether the Legislature clearly intended only one punishment for these separate offenses:

> whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the "same" under an imputed theory of liability which would result in the offenses being considered the same under *Blockburger* (i.e. a liberalized *Blockburger* standard utilizing imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

*Philmon*, 609 S.W.3d at 536 (quoting *Ervin*, 991 S.W.2d at 814).

The first two factors address the statutory placement of the offenses. We note that both offenses are found in Chapter 22 of the Penal Code, which is entitled "Assaultive Offenses." The Court of Criminal Appeals "[has] suggested that the presence of two offenses in the same chapter of the Penal Code is a factor in favor of treating them as the same offense." *Benson*, 459 S.W.3d at 77. But the court also advised that courts "must further ask not merely whether the offenses are in the same chapter, but how they are structured within that chapter." *Id.* at 78. This inquiry involves the first factor, which asks whether the offenses are contained in the same statutory section, and the second factor, which asks whether the two offenses are phrased in the alternative. *See id.* Here, the offenses, while in the same Penal Code chapter, are not in the same statutory section. Nor are the offenses phrased in the alternative. There is no way to construe the sexual offense defined by section 22.021(a)(1)(A)(i), (2)(A)(i), (iv)—

14

aggravated sexual assault by causing the penetration of the victim's sexual organ without her consent and, in the same criminal episode, using or exhibiting deadly weapon or causing serious bodily injury—and section 22.02(a)—aggravated assault with the underlying offense of assault causing bodily injury—to suggest that the legislative intent was for the two statutory provisions to pose alternative ways of committing one single offense.

The third factor considers whether both offenses are named similarly. While both offenses have the words "aggravated" and "assault" in the title, the additional language of the Count I offense is dissimilar and specifies that the focus is not merely assaultive conduct. The Count I aggravated-sexual-assault offense includes the word "sexual" in the title, which specifies that the offense is a sex offense that involves the violation of the victim in a sexual manner.

The fourth factor looks at whether the two offenses have similar punishment ranges. Aggravated sexual assault is a first-degree felony with a punishment range of incarceration between five and ninety-nine years or life. *See* Tex. Penal Code §§ 12.32(a), 22.021(e). Aggravated assault is a second-degree felony with a punishment range of incarceration between two and twenty years. *See id.* §§ 12.33(a), 22.02(b). The offenses do not have a similar punishment range.[6]

The fifth factor considers whether the two offenses have a common focus, and if so, whether that common focus tends to indicate a single instance of conduct. While the two offenses here both, on the surface, appear to concern assaultive conduct, the focus of each of the offenses is, in actuality, different. *See Weinn v. State*, 326 S.W.3d 189, 193 (Tex. Crim. App.

---

[6] Both offenses do have the same optional punishment of a fine not to exceed $10,000, *see* Tex. Penal Code §§ 12.32(b), 12.33(b), but we consider the mandatory incarceration punishment of the offenses when looking at this factor. *See, e.g.*, *Philmon v. State*, 609 S.W.3d 532, 539 (Tex. Crim. App. 2020); *Garfias v. State*, 424 S.W.3d 54, 61 (Tex. Crim. App. 2014).

15

2010) (explaining that common-focus factor "includes whether the gravamens of the offenses are the same"). In fact, as we noted earlier, "the offenses at issue in this case each have a different *type* of focus." *See Benson*, 459 S.W.3d at 81. As noted previously, aggravated assault with the underlying crime of assault causing bodily injury is a result-oriented offense. *Landrian*, 268 S.W.3d at 540. Consistent with being a result-oriented offense, aggravated assault focuses on bodily injury to the victim, with the victim injured being the allowable unit of prosecution. *Shelby v. State*, 448 S.W.3d 431, 439 (Tex. Crim. App. 2014); *Landrian*, 268 S.W.3d at 537; *see Garfias*, 424 S.W.3d at 61 (concluding that conviction of aggravated assault causing bodily injury "focused solely on the actual harm inflicted"). By contrast, aggravated sexual assault is a nature-of-conduct offense. *Vick*, 991 S.W.2d at 832. The offense focuses on prohibited sexual conduct, with each specified type of act constituting a discrete offense. *Gonzales*, 304 S.W.3d at 849; *Huffman*, 267 S.W.3d at 906; *Vick*, 991 S.W.2d at 833. Thus, the two offenses at issue here do not have the same or a similar focus and do not prescribe the same unit of prosecution.[7]

The sixth factor considers whether the elements that differ between the two offenses could be the same under an imputed theory of liability. Even under an imputed theory of liability, the differing elements, as charged in this case, cannot be considered the same

_____

[7] The Court of Criminal Appeals recognized that in every case in which the court has found the offenses to be the same under an *Ervin* analysis, the focus of each of the offenses and the units of prosecution for the offenses have been the same. *Ex parte Benson*, 459 S.W.3d 67, 80 (Tex. Crim. App. 2015); *see, e.g.*, *Ex parte Ervin*, 991 S.W.2d 804, 816 (Tex. Crim. App. 1999) (offenses of manslaughter and intoxication manslaughter are both result-oriented offenses with common focus (death of individual) and identical units of prosecution (each victim killed)); *Bigon v. State*, 252 S.W.3d 360, 371 (Tex. Crim. App. 2008) (offenses of felony murder and intoxication manslaughter are both result-oriented offenses with same focus (death of individual) and identical units of prosecution (each victim killed)); *Shelby v. State*, 448 S.W.3d 431, 438–39 (Tex. Crim. App. 2014) (offenses of aggravated assault with deadly weapon against public servant and intoxication assault are both result-oriented offenses with same focus (bodily injury to individual) and same unit of prosecution (each victim injured)).

16

because the element of intentionally, knowingly, or recklessly causing bodily injury, even under a liberalized *Blockburger* standard, cannot be imputed to the element of penetrating the sexual organ of the victim without her consent. "The different elements are not at all related." *See Philmon*, 609 S.W.3d at 540.

The last factor looks at whether there is legislative history articulating an intent to treat the offenses as the same or different. With respect to these two offenses, there is no legislative history explicitly suggesting either way.

While a few of the *Ervin* factors weigh in favor of the Legislature intending the two offenses to be punished as one—that both offenses are found in the same chapter of the Penal Code and the similarity in the offense names—those factors hold little weight given the different foci and dissimilar gravamina of the two offenses. *See Garfias*, 424 S.W.3d at 59 (observing that Court of Criminal Appeals "has found that the focus, or 'gravamen,' of the two offenses is the best indicator of the Legislature's intent to treat the offenses as the same or different for double jeopardy purposes"). After considering the non-exclusive *Ervin* factors, it is not apparent that the Legislature clearly intended only one punishment for these two offenses. Consequently, the judicial presumption that the two offenses, having different elements, are different for double-jeopardy purposes is not rebutted. Therefore, we conclude that the two offenses are not legally the same for double-jeopardy purposes.

Accordingly, the convictions for the Count I aggravated sexual assault and the Count II aggravated assault, and the multiple punishments imposed for them, do not violate the prohibition on double jeopardy. *See Philmon*, 609 S.W.3d at 536 ("If, as pleaded, the offenses each have at least one element the other does not, and if, according to the relevant statutory provisions, it is not clear that the Legislature intended both offenses to be punished as one, then

17

separate convictions and punishments for each offense does not violate one's right against double jeopardy."). Because double-jeopardy principles were not violated in this case, no double-jeopardy violation is clearly apparent from the face of the record, and appellant cannot raise his double-jeopardy multiple-punishments claim for the first time on appeal. *See Garfias*, 424 S.W.3d at 64. We overrule appellant's sole point of error.

## CONCLUSION

Having concluded that appellant's convictions for aggravated sexual assault in Count I and for aggravated assault in Count II do not violate the double-jeopardy prohibition against multiple punishments for the same offense, we affirm the trial court's judgments of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Byrne, Justices Goodwin and Smith

Affirmed

Filed: February 11, 2021

Do Not Publish