Keasler, J., delivered the opinion for a unanimous Court.
Robert Rodriguez assaulted a man, shattering the victim's knee and causing him serious bodily injury. Rodriguez contends that, while he intended to cause some bodily injury to the victim, he did not honestly believe that his actions would result in serious bodily injury. Rodriguez claims he should have received a jury instruction that, if his belief was reasonable under the circumstances, he should be convicted only of misdemeanor assault. We disagree.
I. FACTS AND PROCEDURAL POSTURE
The essential facts are these: Robert Rodriguez and his brother assaulted Francisco Plaud-Acosta in a nightclub parking lot. Francisco's knee was badly damaged as a result. "It required surgery, followed by a long recovery period and physical therapy."[1] It is unlikely that Francisco's knee will ever regain its pre-injury form.
The State's theory was that Francisco's assault took place in the course of a car-jacking. Rodriguez was charged with aggravated robbery and aggravated assault.
A. At Trial
Both sides elicited testimony suggesting that an injury of this severity was not reasonably foreseeable, given its (relatively) low-impact cause. Dr. Trent Twitero, Francisco's orthopedic surgeon, "thought it *625 a bit unusual" that Francisco's knee was damaged as badly as it was, "because usually in a bar fight we don't see an injury quite like that[.]" He considered the damage caused to Francisco's knee to be more on par with "car accidents, or falls from a height[.]" Dr. Twitero also compared Francisco's injuries to those sometimes sustained by professional football players: "you know, a very fast and athletic linebacker could hit your knee when it was planted." And he described the very particular positioning one's leg would have to be in for an injury of this nature to occur: "I think he probably would have had to be bearing weight on that leg at the same time to kind of set it up with enough tension to cause that."
When both sides rested and closed, the jury charge was drafted. The charge included the following instruction:
Transferred Intent
The State's accusation is that the defendant intentionally or knowingly caused serious bodily injury to Francisco Plaud-Acosta.
"Transferred intent" means a person is criminally responsible for causing a result if the only difference between what actually occurred and what the person desired, contemplated, or risked is that: (1) a different offense was committed; or (2) a different person or property was injured, harmed, or otherwise affected.
This means that a person is criminally responsible for causing serious bodily injury to a person although the person did not intend or contemplate that the bodily injury be "serious" as long as the person intended or had knowledge that his conduct would cause any bodily injury to the person.[2]
Rodriguez objected to this instruction. His objection was overruled.
Citing our opinion in Thompson v. State ,[3] Rodriguez then requested a mistake-of-fact instruction under Texas Penal Code Section 8.02. Rodriguez's theory was that, if the jury believed his intent was only to cause non-serious bodily injury (sometimes called "simple" bodily injury),[4] he should be acquitted of aggravated assault and convicted of misdemeanor assault.[5] This request was denied.
The jury acquitted Rodriguez of aggravated robbery, convicted him of aggravated assault, sentenced him to 12 years' imprisonment, and assessed a $10,000 fine.
B. On Appeal
Rodriguez raised only a single point of error before the Fourth Court of Appeals: that the trial judge erred when he failed to include Rodriguez's requested mistake-of-fact instruction. Citing Thompson and Louis v. State ,[6] Rodriguez argued that, because "the transferred intent doctrine was used to transfer the intent from the bodily injury offense (assault) to the serious bodily injury offense (aggravated assault)," he was "entitled ... to urge the mistake of fact defense-that he had a reasonable, but mistaken belief that he was only inflicting bodily injury."[7]
*626 The court of appeals agreed: "[B]ecause the trial court gave the jury an instruction on transferred intent ... and Rodriguez requested a mistake-of-fact instruction, the trial court erred in refusing Rodriguez's request."[8] The court of appeals concluded that, because "[i]t would not be unreasonable for Rodriguez to be mistaken about the type of injuries his actions ... would cause," the trial court's failure to give a mistake-of-fact instruction prevented Rodriguez from presenting a viable defense.[9] It reversed Rodriguez's conviction and remanded the case back to the trial court.[10]
C. Discretionary Review
The State raises the following issue on discretionary review: "Does the submission of an instruction on transferred intent entitle a defendant to an instruction on mistake of fact even if the greater offense does not have any additional culpable mental state and there is no evidence that the defendant harbored a mistaken belief?"
II. LAW
In Thompson v. State , we "consider[ed] the scope of" Texas Penal Code Section 6.04(b)(1), which provides:
A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that ... a different offense was committed [.][11]
We concluded that this provision "can be used under certain circumstances to transfer intent from a lesser offense to a greater offense, even when those offenses are contained within the same penal code section."[12] Thus, in a prosecution for injury to a child, the intent to cause bodily injury "transfers" so that the offender may be criminally liable for any serious bodily injury that in fact occurs.[13]
We recognized immediately that this construction could, if left unchecked, raise a "concern that a person could be penalized far beyond his actual culpability."[14] We thus saw fit to discuss one such check, the Section 8.02 mistake-of-fact defense:
It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.[15]
So long as one's mistaken belief about the extent of the injury being inflicted is reasonable under the circumstances, we said, he may claim mistake-of-fact.[16] "Of course, he would still be guilty of the lesser-included offense of intending to cause bodily injury."[17] We suggested that whenever a defendant in a criminal proceeding is "subject[ed] to" the transferred-intent instruction, he is "entitled (upon request) to a mistake of fact instruction."[18] Later, in Louis v. State (another injury to a child case), we emphasized the "entitled" language used in Thompson , furthering the idea that giving a mistake-of-fact instruction *627 under these circumstances should be automatic (or, as the State puts it, "reflexive").[19]
On the other hand, we recently reaffirmed, in Celis v. State , that a mistake-of-fact instruction should only be given when the actor's mistake "negate[s] the culpable mental state required for the offense."[20] We noted that, in a prosecution for falsely holding oneself out as a lawyer, the State need not prove a culpable mental state with respect to whether the defendant was "in good standing with the State Bar of Texas."[21] We concluded that a mistake-of-fact instruction would not be warranted as to that particular element-even if the defendant's mistake was reasonable under the circumstances-because any such mistake would not negate an elemental culpable mental state.[22] Conversely, in prosecutions for first-degree injury to a child (à la Thompson and Louis ), the State does have the burden to prove culpability with respect to the causing of serious bodily injury (at least in the absence of any transferred-intent instruction).[23] This means that when it comes to causing injury to a child, a mistake about the potential injuriousness of one's conduct might negate an elemental culpable mental state, satisfying that particular prerequisite for a mistake-of-fact instruction.[24]
These corresponding doctrines ( Thompson 's suggestion that a defendant subjected to a transferred-intent instruction is "entitled" to mistake-of-fact and Celis 's reaffirmation that mistake-of-fact must negate an elemental culpable mental state) raise the following, largely dispositive question in this case: In a prosecution for aggravated assault, does the State have the burden to prove that the defendant harbored a culpable mental state with respect to the element of "serious bodily injury"?
III. ANALYSIS
A. Aggravated assault does not require a culpable mental state with respect to the element of "serious bodily injury."
Section 22.02(a)-describing the base offense of aggravated assault-reads as follows:
A person commits an offense if the person commits assault as defined in § 22.01 and the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits *628 a deadly weapon during the commission of the assault.[25]
This provision does not explicitly mention any of the culpable mental states listed in Section 6.02. Because of this, it cannot be said to "plain[ly]" indicate that culpability either should, or should not, attach to the element of serious bodily injury.[26] On the other hand, Section 22.02 does require that "the person commit[ ] assault as defined in § 22.01."[27] Assault, as relevant to the facts of this case, requires that the offender "intentionally, knowingly, or recklessly" cause bodily injury to the victim.[28] So it is impossible to "commit[ ] assault as defined in § 22.01"-and, therefore, to commit aggravated assault-without at least being reckless.[29] But reckless as to what?
By its text, Section 22.02(a) incorporates a culpable mental state only insofar as one is required to prove the aggravated-assault "element" of simple assault. And like the drug-free zone enhancement statute we recently examined in White v. State , the aggravated assault statute is conspicuously silent as to the aggravating element of "serious bodily injury."[30] We said in White that "[i]n the context of an offense that otherwise does prescribe a culpable mental state, the lack of express language requiring an additional mens rea with respect to other elements is a compelling indication that the Legislature did not intend an additional culpable mental state."[31] We reiterate today that, short of explicitly dispensing with a culpable mental state,[32] this is perhaps the strongest indicator of the Legislature's intent that one may find. In any event, "[t]his prescription of a mental state as to one element and not as to others sufficiently demonstrates the Legislature's intent to dispense with a mental state as to those other elements."[33]
We note also, in this regard, that the offenses of assault and aggravated assault each contain an enhancement provision that raises the level of the respective offense when it is committed against "a person the actor knows is a public servant[.]"[34] The so-called "drive-by" enhancement in Section 22.02 also parcels out culpable mental states in a very particular fashion: The second-degree offense of aggravated assault is elevated to a first-degree felony if the offender, while in a motor vehicle, (A) "knowingly" discharges a firearm at a habitation, building, or vehicle, (B) "is reckless" about whether the habitation, building, or vehicle is occupied, and (C) in discharging the firearm, "causes serious bodily injury" to any person.
*629 [35] It is clear to us that when the Legislature wishes to attach a culpable mental state to a result or circumstance that increases the potential penalty for violation, it knows how to do so.[36] That it chose to do so with respect to these elevating circumstances and not the element of "serious bodily injury" is, to say the least, telling.
Even without reference to these enhancement provisions, we have previously said that, in the context of aggravated assault, the "single criminal act" requiring a culpable mental state is the act of "causing bodily injury."[37] In Landrian v. State , we decided that a jury need not unanimously agree upon a single "aggravating factor[ ]" ("serious bodily injury" or "deadly weapon") when finding a defendant guilty of aggravated assault.[38] Part of our reasoning was that "[t]he actus reus for 'bodily injury' aggravated assault is 'causing bodily injury."[39] It is just "[t]his actus reus ," we said, that "must be accompanied by a culpable mental state."[40] Whether a deadly weapon is utilized or serious bodily injury results, "[i]t is still the same single criminal act and still the same single bodily injury to the victim."[41] It was in this sense that we said that "[t]he gravamen of the offense of aggravated assault is the specific type of assault defined in Section 22.01"-in this case, as in Landrian , "causing bodily injury."[42]
The commission of "simple" assault is rightly understood as the gravamen-the "substantial point or essence"[43] -of an aggravated assault prosecution, because the line between "simple" assault and aggravated assault "does not separate lawful from unlawful conduct."[44] Instead, as with the drug-free zone enhancement, the inclusion of a serious-bodily-injury element to the offense of aggravated assault "separates already-unlawful conduct from even more egregiously unlawful conduct."[45] The line between lawful and unlawful conduct is crossed when one goes from accidentally causing bodily injury to culpably causing bodily injury-not when one goes from culpably causing bodily injury to culpably causing serious bodily injury. It is therefore quite appropriate that, under Section 22.02, the offender must bear some culpability with respect to causing bodily injury, else he will not be guilty even of simple assault. But once he, with a guilty mind, succeeds in injuring another, it is not unreasonable that he should be criminally responsible for any serious bodily injury that may occur.[46]
*630 B. Rodriguez was not entitled to a mistake-of-fact instruction, because his mistake did not negate any elemental culpable mental state.
Thompson says that "[w]here § 6.04(b)(1) permits the transfer of a culpable mental state, mistake of fact may be raised as a defense."[47] What we have just established is that, once the State has satisfied its burden to establish culpability in the course of proving "simple" assault, Section 22.02 does not require proof of any additional culpable mental state as to the aggravating element of "serious bodily injury." When, then, a person intends "simple" bodily injury and happens to effectuate serious bodily injury, it is not the case that "the only difference between what actually occurred" and what he intended is that "a different offense was committed."[48] Instead, based on his intent, it is the very same offense for which he is charged-aggravated assault-that "was committed." The transferred-intent instruction in this case therefore accomplished no more than what Section 22.02 already envisions. This is not, in other words, a situation "[w]here § 6.04(b)(1) permit[ted] the transfer of a culpable mental state,"[49] but rather one in which Section 22.02 itself permitted such a transfer. Indeed, it is more accurate to say that Rodriguez's intent did not "transfer" at all, because there was no element beyond causing "simple" bodily injury that required any proof of intent.[50]
Even assuming arguendo that the transferred-intent instruction in this case allowed the State to more easily prove some culpable mental state or other, Rodriguez was still required to meet the statutory prerequisites to a mistake-of-fact instruction before receiving one. Whether subject to a transferred-intent instruction or not, to be "entitled" to a mistake-of-fact instruction, a defendant must always establish that, "through mistake," he "formed a reasonable belief about a matter of fact" such that "his mistaken belief negated the kind of culpability required for commission of the offense."[51] But for the exact same reason as above, Rodriguez cannot make such a showing: The greater offense in this case (aggravated assault) does not require a culpable mental state as to the additional, aggravating element (serious bodily injury), so any mistake about the additional element would not negate an elemental culpable mental state.[52] We agree with the State that giving a mistake-of-fact instruction in this case would have been contrary to the language of Section 8.02. In holding otherwise, the court of appeals mistook the reach of Thompson and Louis .
As an alternative to resolving this case on the relatively narrow grounds we rely upon today, both the State and defense argue that Thompson was wrongly decided and should be overruled. They are joined by at least one prominent legal scholar.[53] We note, however, that if Thompson appears *631 to create an "unfairly harsh" result,[54] it is only because, as noted by the same scholar, " Section 6.04(b)(1)... is a poorly worded statute that creates a risk of imposing criminal liability beyond what is appropriate [.]"[55] If this is so, the better solution is for the Legislature to "revis[e] [S]ection 6.04(b)(1)" and thereby "rectify the confusion that the current statute has helped to engender."[56] In any event, it would be inappropriate for this Court to entirely overrule-or even to reaffirm- Thompson in this case, given our determination that Section 6.04(b)(1) was not truly implicated.[57]
V. CONCLUSION
In a prosecution for aggravated assault, the State need only prove the defendant harbored a culpable mental state as to the underlying assault. Accordingly, even if Rodriguez reasonably believed that his actions would cause only "simple" bodily injury, his mistake about the severity of Francisco's injuries did not negate any elemental mental state.[58] A mistake-of-fact instruction on these grounds would have been contrary to Section 8.02(a). The court of appeals' judgment is reversed, and the trial court's judgment is affirmed.

Rodriguez v. State , 491 S.W.3d 379, 380 (Tex. App.-San Antonio 2016, pet. granted).

See Tex. Penal Code § 6.04(b)(1). Unless otherwise indicated, all subsequent references in the body of this opinion to "sections" refer to the Texas Penal Code.

236 S.W.3d 787 (Tex. Crim. App. 2007).

See, e.g. , Landrian v. State , 268 S.W.3d 532, 538 (Tex. Crim. App. 2008) (referring to "simple" bodily injury assault).

See Tex. Penal Code § 8.02(b).

393 S.W.3d 246 (2012).

Appellant's Brief in the Fourth Court of Appeals at 9.

Rodriguez , 491 S.W.3d at 382.

Id. at 382-83.

Id. at 383.

Thompson , 236 S.W.3d at 788-89 ; see also Tex. Penal Code § 6.04(b)(1).

Thompson , 236 S.W.3d at 789.

Id. at 793.

Id. at 800.

Tex. Penal Code § 8.02(a).

Thompson , 236 S.W.3d at 793.

Id. ; see also Tex. Penal Code § 8.02(b).

Thompson , 236 S.W.3d at 789.

Louis , 393 S.W.3d at 253 ("Appellant was indeed subjected to [a transferred-intent] instruction[;] thus upon his request, he was entitled to have a mistake-of-fact instruction included in the jury charge.").

416 S.W.3d 419, 431 (Tex. Crim. App. 2013) (plurality opinion) (internal quotation marks omitted) (quoting Thompson , 236 S.W.3d at 798 ).

See ids="9984678" index="17" url="https://cite.case.law/sw2d/818/782/#p785">id. at 424-25 ; Tex. Penal Code § 38.122.

Celis , 416 S.W.3d at 432 (plurality opinion).

See Tex. Penal Code § 22.04(a)(1) ; Thompson , 236 S.W.3d at 789 (distinguishing "intentionally or knowingly causing serious bodily injury, a first-degree felony" and "intentionally or knowingly causing bodily injury, a third-degree felony"); Louis , 393 S.W.3d at 253 ("Besides the primary offense of capital murder, in this case the jury charge included multiple lesser offenses such as intentionally or knowingly causing serious bodily injury to a child and intentionally or knowingly causing bodily injury to a child.").

Thompson , 236 S.W.3d at 793 ("In this case, a mistake of fact regarding the seriousness of L.G.'s injury would seem to negate the charged mental state of intent to cause serious bodily injury.").

Tex. Penal Code § 22.02(a).

See Boykin v. State , 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("[I]f the meaning of the statutory text ... should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.") (internal quotation marks and citations omitted).

Tex. Penal Code § 22.02(a).

Id. § 22.01(a)(1).

See id. §§ 22.02(a), 22.01(a)(1).

White , 509 S.W.3d 307, 313 (Tex. Crim. App. 2017) (citing United States v. X-Citement Video , 513 U.S. 64, 72 n.3, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) ).

Id. at 311 (internal quotation marks removed) (citing Celis , 416 S.W.3d at 423 (plurality opinion)).

See, e.g. , Tex. Penal Code § 49.11 ("Notwithstanding Section 6.02(b), proof of a culpable mental state is not required for conviction of an offense under this chapter.").

Celis , 416 S.W.3d at 424 (plurality opinion) (citations omitted).

Tex. Penal Code §§ 22.01(b)(1), 22.02(b)(2)(B).

Id. § 22.02(b)(3).

See Black v. State , 26 S.W.3d 895, 897 (Tex. Crim. App. 2000) ("[T]he legislature understands how to require specific intent as to the nature of the circumstances surrounding a particular method of committing capital murder."). Cf. Cornet v. State , 359 S.W.3d 217, 222 (Tex. Crim. App. 2012) (partial plurality opinion) ("[W]hen the Legislature desires to convey a certain level of specificity within a statutory provision, it knows how to do it.") (citations omitted).

Landrian , 268 S.W.3d at 537-39.

Id. at 533.

Id. at 537.

Id.

Id. at 539.

Id. at 537.

Gravamen , Black's Law Dictionary (10th ed. 2014).

White , 509 S.W.3d at 313.

Id.

See Fleming v. State , 455 S.W.3d 577, 592 (Tex. Crim. App. 2014) (Keller, P.J., dissenting) ("Commission of the predicate crime is the dangerous activity that places the defendant on notice that he better be careful or he may be liable for another crime.").

Thompson , 236 S.W.3d at 800.

See Tex. Penal Code § 6.04(b)(1).

Thompson , 236 S.W.3d at 800.

Contra Tex. Penal Code § 22.04(a)(1) (requiring proof, in a first-degree-felony prosecution for injury to a child, of a culpable mental state with respect to the element of "serious bodily injury").

Tex. Penal Code § 8.02(a).

See Celis , 416 S.W.3d at 432 (plurality opinion).

See State's Brief on the Merits app. (reproducing the Amicus Curiae Brief of George E. Dix in Support of Appellant's Motion for Rehearing, Joshua Thompson v. The State of Texas , No. PD-0044-06 (Tex. Crim. App. July 19, 2007)).

See State's Petition for Discretionary Review at 7.

43 George E. Dix & John M. Schmolesky, Texas Practice-Criminal Practice and Procedure § 43.17, at 883 (3d ed. 2011).

Id. at 886.

VanDevender v. Woods , 222 S.W.3d 430, 433 (Tex. 2007) (reaffirming the "well-settled prudential doctrine that cases should be decided on narrow, non-constitutional grounds whenever possible").

See Tex. Penal Code § 8.02(a) ; Celis , 416 S.W.3d at 432 (plurality opinion).