

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1061-19

**ORLANDO ORTIZ , Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### LASALLE COUNTY

## NO. PD-1362-18

**DEWEY BARRETT, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON THE COURT'S OWN MOTION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### SMITH COUNTY

KELLER, P.J., filed a dissenting opinion in which WALKER and SLAUGHTER, JJ., joined.

The assault statute sets forth a number of alternative elements that elevate bodily-injury assault from a Class A misdemeanor to a third-degree felony.[1] One of those involves what the Court calls the "occlusion" element.[2] The question in the "occlusion" assault cases before us is whether a person can obtain a lesser-included offense instruction if he produces some evidence that a bodily-injury assault occurred without "occlusion." The Court says there is no such lesser-included offense because the unit of prosecution for bodily-injury assault is the injury and occlusion is a different injury than an injury in a bodily-injury assault without occlusion.

I disagree. "Bodily injury" describes the unit of prosecution for a bodily-injury assault, but not in quite the same way as the Court conceives it. I would hold that "bodily injury" includes all physical injuries sustained in a single transaction. Regardless, the "occlusion" element is structured within the assault statute as a classic aggravating element that does not prescribe the unit of prosecution for the base offense. So while occlusion can factually be part of the bodily injury a victim might sustain, occlusion itself does not describe the unit of prosecution. This means that, if the defendant can produce evidence that occlusion did not occur but that the victim suffered some other physical injury or injuries that would make him guilty only of a "plain" bodily-injury assault,[3]

---

[1]  TEX. PENAL CODE § 22.01(b).

[2]  *Id.* § 22.01(b)(2)(B).

[3]  If the defendant's evidence showed only that the defendant inflicted what would be recognized as "serious bodily injury" or that he used a deadly weapon in inflicting injuries, then it could be argued that such evidence would not show him to be guilty only of "plain" bodily-injury assault because it would show him guilty of the greater offense of aggravated assault, a second-degree felony. *See* TEX. PENAL CODE §22.02(a) ("serious bodily injury" and "deadly weapon" listed as aggravating elements to the base offense of assault), (b) (second-degree felony); *Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999) (Defendant not entitled to submission of lesser-included offense of aggravated assault in murder case charged under Penal Code § 19.02(b)(1)

then the defendant would be entitled to the lesser-included offense of "plain" bodily-injury assault, a Class A misdemeanor.

## A. The Assault Statute

The base offense of bodily-injury assault is set out in the assault statute as follows:

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; . . .[4]

Under the version of the Penal Code that applies to the defendants' offenses, there are five separate, enumerated elements that each elevate bodily-injury assault from a Class A misdemeanor to a third-degree felony:

(b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:

(1) a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant;

(2) a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if:

(A) it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code; or

(B) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth;

---

because his evidence would show, at best, guilt of murder under § 19.02(b)(2), and thus "there was no evidence that [he] was guilty only of anything less than some form of murder."). I assume without deciding that such an argument would be correct.

[4] TEX. PENAL CODE § 22.01(a)(1).

(3)  a person who contracts with government to perform a service in a facility as defined by Section 1.07(a)(14), Penal Code, or Section 51.02(13) or (14), Family Code, or an employee of that person:

(A)  while the person or employee is engaged in performing a service within the scope of the contract, if the actor knows the person or employee is authorized by government to provide the service; or

(B)  in retaliation for or on account of the person's or employee's performance of a service within the scope of the contract;

(4)  a person the actor knows is a security officer while the officer is performing a duty as a security officer; or

(5)  a person the actor knows is emergency services personnel while the person is providing emergency services.[5]

All five of these elements are in a series ultimately separated by an "or," so any one of these elements can elevate bodily-injury assault to a third-degree felony.[6]  Elements (2) and (3) also contain enumerated sub-elements separated by an "or," and elements (1) through (3) contain disjunctive sub-elements that are not enumerated.  I will refer to element (2) as the "family-relationship element."  What the Court describes as "occlusion" is sub-element (B) under the family-relationship element: "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth."

### B. Alternative Aggravating Factors, Not Units of Prosecution

### 1. The family-relationship element (of which occlusion is a part) is parallel to other

---

[5]  TEX. PENAL CODE § 22.01(b)(1)-(5) (2015).  The current version of the Penal Code contains two additional separately enumerated elements.  TEX. PENAL CODE § 22.01(b)(6)-(7).

[6]  *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (in a statute, "or" is almost always disjunctive); *Chambers v. State*, 580 S.W.3d 149, 159 (Tex. Crim. App. 2019) (same).

**elements in the assault statute that do not prescribe a unit of prosecution.**

Before I discuss why I think the term "bodily injury" consists of all injuries within a single transaction, it is useful to discuss the implications of these alternative elevating elements and sub-elements and of the structure of the statute in which the occlusion sub-element appears. All five of the overarching elements involve a particular type of victim, respectively: (1) a public servant, (2) a person with a family relationship with the attacker (with "occlusion" being an enumerated alternative sub-element), (3) a government contractor in a correctional or detention facility,[7] (4) a security officer, and (5) a person who is emergency services personnel.

Setting aside for the moment the family-relationship element, the remaining four elements do not involve any sort of injury. Rather, they identify the victim by status and then say that the victim was either in the course of performing duties relating to that status, or the defendant's assault on the victim was in retaliation for or on account of the victim performing those duties. By the Court's own reasoning, because they do not involve injury, these four overarching elements do not prescribe the unit of prosecution for the offense of third-degree felony assault. That conclusion is also consistent with caselaw.[8]

That conclusion is important because of the parallel position in the assault statute that the family-relationship element has with the other four elements. The assault statute lists these five overarching elements as parallel clauses in a series. Parallel clauses in a series must have the same

---

[7] *See* TEX. PENAL CODE § 1.07(a)(14); TEX. FAM. CODE §51.02(13), (14).

[8] *See Hernandez v. State*, 556 S.W.3d 308, 327 (Tex. Crim. App. 2018) (op. on reh'g) (For unit-of-prosecution purposes, the gravamina of aggravated assault [of which assault is the base offense] "are the victim and the bodily injury that was inflicted.").

functional effect within a statute.[9]   Accordingly, either all five of these elements prescribe units of prosecution resulting in separate offenses, or none of them do.  Since the other four elements clearly do not prescribe units of prosecution resulting in separate offenses, it follows that the family-relationship element does not either.

### 2. The family-relationship element could be charged in the alternative with these other elements that do not prescribe a unit of prosecution.

Moreover, looking again at just the other four overarching elements, it appears that they are alternative elements of committing the same offense. In a given case, a victim could be both a public servant and a security officer.  Or a victim could be a public servant and emergency services personnel.  Conceivably the victim could be a government contractor at a correctional facility and a security officer or a government contractor at a correctional facility and emergency services personnel.  If a victim acted in one of those sets of dual capacities, those would constitute alternative aggravating elements for the offense of assault, not separate units of prosecution. And while one probably cannot act as both a public servant and a government contractor, there might be situations in which there is uncertainty as to which the victim is, and the State could charge these in the alternative.

If the other four overarching elements can be charged in the alternative, the natural inference would be that the same is true of the family-relationship element, as a parallel part of a series with

---

[9]  *O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 74 (1st Cir. 2017) (Quoting THE CHICAGO MANUAL OF STYLE § 5.212 (16th ed. 2010): "Every element of a parallel series must be a functional match of the others (word, phrase, clause, sentence) and serve the same grammatical function in the sentence (e.g., noun, verb, adjective, adverb)."); *Moronta v. Nationstar Mortgage*, LLC, 476 Mass. 1013, 1015, 64 N.E.3d 1287, 1290 (2016) (citing THE CHICAGO MANUAL OF STYLE, *supra*).

these other elements.[10]  It is conceivable, though perhaps an unlikely scenario, that a victim could have a family relationship with the defendant and also be acting in a capacity described by one of the other four elements, such as being a public servant or emergency services personnel.  If so, the State could charge this additional capacity as an alternative element to the family-relationship element.  And regardless of whether such a scenario is likely, the statute is structured to allow the family-relationship element to be charged as an alternative element.

Ordinarily, a jury would not even need to be unanimous about the proof of such alternative elements.[11]  And this sort of jury unanimity issue is "closely intertwined" with our double-jeopardy jurisprudence.[12]  Most of the time, a unit-of-prosecution issue that impacts both juror unanimity and double-jeopardy involves "determining whether alternative statutory elements mark separate offenses or simply represent alternative means of committing the same offense."[13]  And when the conclusion is that the alternative statutory elements simply represent alternative means of committing the same offense, those elements rarely have any effect on the unit of prosecution.  This is true even if the element would, in isolation, have prescribed a unit of prosecution.  Capital murder provides a ready example: The unit of prosecution is the murder of the predicate victim, and the elements that elevate

---

[10]  *See id.*

[11]  *Gardner v. State*, 306 S.W.3d 274, 302 (Tex. Crim. App. 2009) (jury need not be unanimous about which of two underlying offenses that elevate murder to capital murder were committed).

[12]  *Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008).

[13]  *Johnson v. State*, 364 S.W.3d 292, 296 (Tex. Crim. App. 2012).

a murder to capital murder are simply alternative methods of committing the same capital murder.[14] This is true even though elevating elements can be felony offenses (e.g. burglary and retaliation) that would be legally separate from each other[15] or felony offenses that would be factually separate because they involve different victims.[16]

The multiple-murder version of capital murder presents a limited exception to this principle: The State cannot use the same murder victim to charge multiple capital murder offenses by manipulating who the predicate murder victim is, and unanimity problems can occur if the State does not make clear who the predicate murder victim is.[17] The potential ability to manipulate how victims are characterized and the number of victims alleged make the multiple-murder situation unusual and unlike the family-relationship element at issue here. In any event, this limited exception operates only to *restrict* the State's ability to prosecute multiple offenses. It does not confer on the State the ability to prosecute more capital murder offenses than could be prosecuted under the other aggravating factors for capital murder.

### 3. The family-relationship element is focused on status, not injury.

Further, the family relationship element is itself structured as a status element. The subsection prescribing this element has a common part (subsection (2) proper) and then two

---

[14] *Gamboa v. State*, 296 S.W.3d 574, 583-84 (Tex. Crim. App. 2009). A unit of prosecution issue can arise in a capital murder prosecution that involves multiple murders if the State does not clearly identify who predicate-murder victim is or if the State tries to use a victim more than once in its charges. *See infra* at n.17 and surrounding paragraph.

[15] *Gardner*, 306 S.W.3d at 301-02.

[16] *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010).

[17] *See Saenz v. State*, 451 S.W.3d 388, 390-92 (Tex. Crim. App. 2014).

subdivisions ((A) and (B) under subsection (2)). The common part provides that the person has a family-relationship with the victim under one of several specified Family Code provisions. The two subdivisions are alternative sub-elements. One specifies the defendant having a prior family-violence conviction while the other specifies the defendant committing occlusion against the victim.

That the two subdivisions have nothing in common other than being related to the common part of subsection (2) is some indication that this common part provides the focus of the family-relationship element.[18] And the common part of subsection 2 is all about the victim's status: the victim has a family relationship with the defendant. The fact that the other four overarching elements are about the victim's status reinforces the conclusion that the family-relationship element is a status element as well. The focus of the family-relationship element being on status, rather than injury, suggests that the family relationship element is not an "injury" element that prescribes the unit of prosecution.

### 4. The occlusion sub-element in the family-relationship element is parallel to, and could be charged in the alternative with, a sub-element that does not prescribe the unit of prosecution.

As explained earlier, the family-relationship element has two sub-elements: the occlusion sub-element and the prior-conviction sub-element. Under the Court's reasoning (and consistent with caselaw), the prior-conviction sub-element would not prescribe a unit of prosecution for bodily-injury assault because it is not an "injury" element.[19] In any event, it is hard to conceive how a prior-

---

[18] *See also Cooper v. State,* 430 S.W.3d 426, 431 (Tex. Crim. App. 2014) (Keller, P.J., concurring) (discussing similar structure in capital-murder and failure-to-stop-and-render-aid statutes as tending to show focus of those statutes on the common element and contrasting statutes in which a common element tying subdivisions together was absent or perfunctory).

[19] *See supra* at n.8.

conviction element could ever prescribe a unit of prosecution. The occlusion sub-element is parallel to the prior-conviction sub-element within the assault statute. This parallel structure would suggest that the two sub-elements should be treated the same for unit of prosecution purposes. It would also suggest that the occlusion and prior-conviction sub-elements could be charged together in the same prosecution as alternative aggravating elements.

If, instead, the legislature had wanted the occlusion sub-element to prescribe the unit of prosecution for an "occlusion assault" offense, it could have crafted a separate "occlusion assault" offense rather than drafting the occlusion and prior-conviction sub-elements as statutory alternatives. In *Ex parte Benson*, we dealt with the inverse scenario, where the Legislature *did* craft a separate assault offense—intoxication assault—and we held that if the legislature had wanted the offenses of felony DWI and intoxication assault to be the same offense, it "could easily have crafted 'serious bodily injury' and 'prior convictions' as statutory alternatives but did not."[20] But crafting injury and prior convictions as statutory alternatives is *exactly* what the legislature did here. In fact, saying that the legislature "has enacted statutes in which the existence of prior convictions is an alternative enhancing element of an offense alongside other alternative enhancing elements that do not involve prior convictions," *Benson* cited, as one of its examples, the family-relationship provision before us.[21]

### C. "Bodily Injury" Includes All Physical Injuries in Same Transaction

---

[20] *See Ex parte Benson*, 459 S.W.3d 67, 89 (Tex. Crim. App. 2015).

[21] *Id.* at 78 & n.62. *Benson* cited to the 2013 version of the statute, which had only four overarching elements instead of five. *Id.* at 78 n.62. The statute was cited as a "cf" cite, perhaps because the prior-conviction element was an alternative element within another alternative element, while other statutory citations dealt with an element being alternative on only one level. *See id.*

As set out earlier, the base offense of assault provides that a person "causes bodily injury to another." In *Johnson v. State*, we explained that separate crimes of aggravated assault "could be based on separately inflicted instances of bodily injury."[22] However, we did not address whether "bodily injury," as statutorily incorporated in aggravated assault, "consists of each discrete harm suffered by the victim or consists of all damage suffered by the victim in a single transaction."[23] This open question applies with equal force to the assault statute because the statutory term "bodily injury" was incorporated into the offense of aggravated assault by virtue of its incorporation of the base offense of assault.[24] I would now hold that "bodily injury" is transactional.

The statute does not say "a" bodily injury. Had it done so, we could be confident that each discrete physical injury suffered would be a separate unit of prosecution.[25] And saying "caused a bodily injury" flows naturally and is not at all awkward. The legislature could have easily phrased the statute that way if it intended each discrete injury to be a separate crime. Consistent with the phrasing in the assault statute, the aggravated assault statute phrases the "serious bodily injury" aggravating factor as "causes serious bodily injury to another."[26] Again, the legislature omitted the

---

[22] *Johnson*, 364 S.W.3d at 298.

[23] *Id.* at 298 n.45.

[24] *See* TEX. PENAL CODE § 22.02(a) ("A person commits an offense if the person commits assault as defined in § 22.01 and the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault.").

[25] *See Jones v. State*, 323 S.W.3d 885, 891-92 (Tex. Crim. App. 2010) ("The presence of 'a' before the term 'materially false or misleading statement' in § 32.32 is at least some indication that each 'materially false or misleading statement' constitutes a separate unit of prosecution.").

[26] *See supra* at n.24.

indefinite article.[27]

Because the indefinite article is omitted, another construction of "bodily injury" is possible, as suggested in *Johnson*: "all damage suffered by the victim in a single transaction." This is a reasonable reading of a statement that says, "The victim has suffered bodily injury." Such a statement does not mean the victim has suffered only one discrete physical injury; rather it is agnostic on what particular physical injuries have been suffered, just that what is suffered amounts to bodily injury. This construction also provides a contrast *in degree* to "serious bodily injury," which if caused by the defendant, raises the offense from assault to aggravated assault (use of a deadly weapon can also raise the offense to aggravated assault).[28]

In addition, a transactional construction of bodily injury produces results in harmony with the obvious conclusion to be drawn from the prior section of this opinion—that occlusion is an aggravating element that does not affect the unit of prosecution. If "bodily injury" consists of all damage inflicted in a single transaction, then occlusion would simply be part of that transactional damage.

I think the statutory language lends itself to the transactional construction, perhaps enough to make it unambiguous. But if ambiguity is perceived, we can look at the consequences of a particular construction.[29] A transactional construction avoids the potential for hairsplitting situations

---

[27] "Serious bodily injury" is not part of the gravamen of aggravated assault, but is one of two alternative aggravating factors. *Rodriguez v. State*, 538 S.W.3d 623, 629 (Tex. Crim. App. 2018). This is consistent with my analysis in the previous section of this opinion.

[28] *See supra* at n.24.

[29] *Williams v. State*, 603 S.W.3d 439, 445 (Tex. Crim. App. 2020) (Extratextual factors for reviewing an ambiguous statute include the "consequences of a particular construction.").

in which it may be unclear whether a victim has been hurt multiple times or in multiple ways or just once. And it accounts for the idea that cumulative strikes might combine to cause bodily injury—or serious bodily injury for other offenses, even if no single strike inflicts harm. It also ensures some proportionality between the punishment the defendant could receive and the degree of harm imposed. Conceivably, a defendant could hit a victim with his fists 100 times in a single transaction and yet inflict very little harm. Under the notion that each discrete injury is an assault, the State could choose to prosecute the defendant 100 times and seek 100 years of cumulative sentences.[30] This approach also avoids possible difficulties with election of offenses and double jeopardy claims.

### D. Conclusion

I disagree with the Court's holding that occlusion is a separate unit of prosecution from other injuries that might be inflicted in an assault. The structure of the statute reveals occlusion to be an aggravating element that does not impact the unit of prosecution. I would also hold that "bodily injury" encompasses all damage inflicted in a single transaction rather than simply being a discrete physical injury. Consequently, I would hold that plain assault can in fact be a lesser-included offense of occlusion assault.

I respectfully dissent.

Filed: March 10, 2021

Publish

---

[30] *See* TEX. PENAL CODE § 3.03; TEX. CODE CRIM. PROC. art. 42.08(a).