

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00074-CR

PAUL CODY TEAGUE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 28,243-B, Honorable John B. Board, Presiding

June 24, 2021

OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Paul Cody Teague, appeals from a jury verdict finding him guilty of aggravated sexual assault, two counts of sexual assault, and one count of aggravated kidnapping. After appellant pled true to an enhancement allegation regarding a prior conviction for aggravated sexual assault, the trial court sentenced appellant to life imprisonment on all counts. Appellant challenges the sufficiency of the evidence supporting his convictions for aggravated sexual assault and one of the sexual assault counts. We affirm the trial court's judgment.

Factual and Procedural Background

The victim[1] in this case was informed by a friend that a "Dean Winters" might be able to help her obtain steady income and stable housing. Victim reached out to Winters online, informing him of her current circumstances. Winters offered Victim a place to stay in exchange for sex, but Victim declined. A couple of weeks later, Winters contacted Victim and offered to provide her a place to stay if she would work for a call service he operated out of his home. Victim agreed to this arrangement and Winters sent a cohort to pick up Victim. At some point, Victim became aware that "Winters" was actually appellant.

Appellant's cohort took Victim to appellant's trailer home located outside of Canyon on Sunday, October 15, 2017. Upon entering appellant's home, the driver immediately stripped naked and began smoking methamphetamine in front of appellant, Victim, and another associate of appellant. Feeling that the entire situation was "very weird," Victim walked out of appellant's house, intending to leave, but appellant followed her out and convinced her to stay the night.

Over the course of the following day, appellant had Victim assist him with the call service, as she expected. However, soon thereafter, appellant accused Victim of breaking his headphones and demanded that she replace them. Victim replaced the headphones, but appellant insisted that this was not sufficient. He claimed that, by breaking his headphones, Victim had caused appellant to lose his job. To repay him,

---

[1] To protect the privacy of the victim in this case, we will refer to her as "Victim."

appellant demanded that Victim have sex with him. When Victim refused, appellant repeatedly shoved her to a back bedroom where he told her that she could not leave until she had sex with him. Victim succumbed to appellant's demand. Even though appellant told Victim that he would take her home after she had sex with him, after she complied, he continued to refuse to let her leave.

Appellant confined Victim in a bedroom where he stripped her naked and told her that she was going to have sex with people appellant brought to the house in order to repay him for breaking his headphones and costing him his job. Appellant restricted Victim to this single room for a day, even posting "guards" at the door to the room. Appellant also instigated a fight between Victim and another woman that resulted in the other woman biting Victim's ear. Victim, fearing that appellant intended to make good on his promise to force her into prostitution, attempted to escape by running out of the back door of the trailer. However, she was recaptured while running through an open field. Appellant choked Victim unconscious and dragged her back to the trailer. Once inside the trailer, appellant chained Victim to a toilet.

Over the next few days, Victim was sexually assaulted multiple times in varying ways. In one such incident, appellant hit Victim with his fists until she lost consciousness. Just before she lost consciousness, Victim saw another man, James Washburn, pull a phallic sex toy, commonly known as a dildo, from his backpack. Whenever Victim would regain consciousness during this period, appellant hit her until she would again lose consciousness. When she was finally allowed to awaken, Victim discovered that she was again chained by the neck and she felt like her "insides were just wounded, very

3

wounded." Appellant informed Victim that Washburn had penetrated her anus with the dildo. When he informed Victim of this, appellant also told Victim that "You're a fighter, aren't you?"

Later, appellant sexually assaulted Victim in the living room of the trailer in front of others. One of the other people at appellant's trailer recognized that Victim needed medical attention and tried to convince appellant to take her to the hospital, but he refused. Victim lay on the floor barely able to move. Regardless, appellant forced Victim to have sex even though she was throwing up bile and told him that she could not have sex.

Finally, one of the people that had been at appellant's trailer informed law enforcement that a woman had been kidnapped and was being held inside appellant's trailer. As a result, an officer knocked on appellant's door, but no one answered. At that time, Victim was locked in a closet and was barely able to move.

Following the visit by the police, appellant told Victim that she needed to leave but that she needed to be quiet because the police had just been by the trailer. Appellant suggested that Victim be dropped off at her grandmother's house in Pampa. Victim, knowing that she needed immediate medical attention, convinced appellant to drop her off at the Pavilion in Amarillo. She told appellant that she would say that she was "crazy" and that she had made up the abduction. Appellant eventually agreed but made clear to Victim that she needed to "keep her mouth shut." Victim was dropped off at the Pavilion at 6:33 p.m. on Thursday, October 19.

4

Victim was transferred to the hospital. While being evaluated, Victim told a sexual assault nurse examiner that, "I was grabbed and chained around the neck and left in a dirty bathtub. I was raped multiple times by three people. The men put their penises in my mouth, my anus[,] and my vagina." She further explained that, "They beat me many times. One of the males used a dildo in my anus a lot. It hurt so much."

The results of Victim's medical evaluation revealed that her colon was beyond six inches from her sphincter, which means that the object that caused the injury had to have penetrated at least that far. Any object that penetrates that deeply can cause the injury sustained by Victim. The penetration caused a hole in Victim's colon. This is a significantly dangerous injury because the hole can allow air and stool to leak out, which can cause infection and sepsis. The pain level that is expected from this injury would prevent most people from walking, let alone having sex.

Police officers returned to appellant's trailer and, based on the information provided by Victim, placed appellant under arrest. Appellant was subsequently indicted for three counts of aggravated sexual assault and one count of aggravated kidnapping. The indictment included an enhancement allegation that appellant had previously been convicted of the felony offense of aggravated sexual assault. After a jury trial, appellant was found guilty of one count of aggravated sexual assault, two counts of the lesser-included offense of sexual assault, and one count of aggravated kidnapping. Appellant pled true to the enhancement allegation. After a very brief punishment hearing, the trial court sentenced appellant to life imprisonment on all counts. Appellant did not file a notice

of appeal but sought an out-of-time appeal from the Court of Criminal Appeals, which was granted on January 29, 2020.

By his appeal, appellant presents two issues. His first issue contends that the evidence is insufficient to show that appellant, acting as a party to the offense, intended for his co-defendant to inflict serious bodily injury on Victim. By his second issue, appellant contends that the evidence is insufficient to show that appellant committed the sexual assault under Count III of the indictment because it fails to establish whether the complained of conduct was done without consent.

## Standard of Review

Both of appellant's issues challenge the sufficiency of the evidence to support his conviction. In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring). We are mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id*. When reviewing all the evidence under the *Jackson* standard of review, the ultimate question is

6

whether the jury's finding of guilt was a rational finding. *See id*. at 906-07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448-50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id*. at 899. In our review, we must evaluate all the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). We measure the sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

## Issue One: Party Liability

By his first issue, appellant contends that the evidence is insufficient to establish his guilt as a party to aggravated sexual assault under Count I, specifically whether he intended Washburn to cause Victim substantial bodily injury. To establish the elements of aggravated sexual assault as alleged in Count I, the State had to prove that Washburn intentionally or knowingly caused the penetration of Victim's anus with a dildo without her consent and in a manner causing her serious bodily injury and that appellant, acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid Washburn in committing the offense. *See* TEX. PENAL CODE

7

ANN. §§ 7.02(a)(2) (West 2021),[2] 22.021(a)(1)(A)(i) (West 2019). Sexual assault, which contains the same elements as aggravated sexual assault other than causing serious bodily injury, is a conduct-oriented offense. *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999).

Appellant admits, in his brief, that the evidence is sufficient to establish that he was a party to the lesser-included offense of sexual assault under Count I. He concedes that the jury was free to believe that, at the least, appellant was in the room with Washburn and Victim at the time when Washburn penetrated Victim's anus with the dildo, repeatedly knocked Victim unconscious before and during the assault, and played a role in restraining Victim throughout the assault. He admits that this is sufficient evidence to prove that he acted with the intent to promote or assist in Washburn's commission of the offense of sexual assault. However, appellant contends that, by charging him under the law of parties, the State was required to establish that appellant intended Washburn's actions to result in serious bodily injury to Victim.

When an offense prescribes a culpable mental state to only some elements, "the lack of express language requiring an additional *mens rea* with respect to other elements is a compelling indication that the Legislature did not intend an additional culpable mental state." *Rodriguez v. State*, 538 S.W.3d 623, 629 (Tex. Crim. App. 2018). Specifically, in an aggravated assault case, since the statute is silent as to the mental state with respect to causing serious bodily injury, the state is not required to establish mental culpability

---

[2] While there are multiple ways to incur criminal liability as a party, for purposes of this opinion, references to party liability refer only to "acting with intent to promote or assist the commission of an offense, [the actor] solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." TEX. PENAL CODE ANN. § 7.02(a)(2).

with respect to the aggravating element. *Id.* at 630. Consequently, the identification of a specific mental state as to one element and not as to others demonstrates the Legislature's intent to dispense with a mental state as to the other elements. *Id.* at 628. As is true with sexual assault and aggravated sexual assault,[3] the aggravating element that separates assault and aggravated assault is serious bodily injury. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1) (West Supp. 2020), 22.02(a)(1) (West 2019). Thus, in both the assault/aggravated assault and the sexual assault/aggravated sexual assault contexts, the aggravating element of serious bodily injury does not separate lawful conduct from unlawful conduct. *Rodriguez*, 538 S.W.3d at 629. The law provides that once the actor intentionally commits the prohibited act and causes injury, he is responsible for whatever degree of injury his intentional act caused. *Id.*

Appellant cites *Nava v. State* for the proposition that the "intent to promote or assist" element of party liability required the State to prove that appellant intended the result of Victim suffering serious bodily injury. *See* 415 S.W.3d 289, 298-99 (Tex. Crim. App. 2013). In *Nava,* Nava and two co-conspirators made a deal with undercover agents to purchase a truckload of stolen televisions. *Id.* at 292. During the deal, one of Nava's co-conspirators brandished a firearm and demanded the keys to the truck containing the stolen items. *Id.* Ultimately, the co-conspirator shot and killed the undercover officer. *Id.* at 293. Nava was charged with felony murder under the theory of party liability. *Id.* The court explained that "[c]ombining the language of [Texas Penal Code section] 7.02(a)(2) with the felony murder statute, then, requires an intent to promote or assist, not only the

---

[3] *See* TEX. PENAL CODE ANN. §§ 22.011(a)(1)(A) (West Supp. 2020), 22.021(a)(2)(A)(i).

commission of the underlying felony and the unreasonably dangerous act, but also the result of the offense of felony murder—the death of an individual." *Id.* at 299-300. We conclude that a charge of aggravated sexual assault as a party is distinguishable from the charge of felony murder as a party in *Nava*. The underlying felony in *Nava* was theft. Nava's intent to promote or assist the commission of that offense cannot be said to have applied to the unexpected murder. Unlike the felony murder charge in *Nava*, the conduct that constitutes the underlying offense of sexual assault, the penetration of Victim's anus with a dildo, is the same conduct that led to Victim's foreseeable serious bodily injury. *See Rodriguez*, 538 S.W.3d at 629 (once an actor intentionally commits the prohibited act and causes injury, he is responsible for whatever degree of injury his intentional act caused).

In the present case, we believe that it is appropriate to apply the doctrine of transferred intent. "A person is criminally responsible for causing a result if the only difference between what happened and what she desired, contemplated, or risked is that a different offense was committed." *Metcalf v. State*, 597 S.W.3d 847, 862 (Tex. Crim. App. 2020) (Keel, J., concurring) (citing TEX. PENAL CODE ANN. § 6.04(b)(1) (West 2021)). In other words, if a defendant intends to promote or assist the commission of one type of sexual assault, but his co-defendant commits a different type of sexual assault, that difference does not shield him from party liability, and he would still be guilty of sexual assault if the other elements of party liability are met. *Id.* The transfer of a culpable mental state between offenses contained in the same statute and between greater and lesser included offenses is explicitly authorized by Texas Penal Code section 6.04(b)(1). TEX. PENAL CODE ANN. § 6.04(b)(1); *Thompson v. State*, 236 S.W.3d 787, 800 (Tex. Crim.

App. 2007). Likewise, where several people act together in pursuit of an unlawful act, each is liable for collateral crimes, even if those crimes were unplanned or unintended, if those crimes are foreseeable, ordinary, and probable consequences of the intended unlawful act. *Curtis v. State*, 573 S.W.2d 219, 223 (Tex. Crim. App. 1978). Specifically, in *Curtis,* the Court of Criminal Appeals held that because the victim's death was a foreseeable consequence of the assault that the defendant promoted, the defendant was liable for the collateral crime of murder even though there was no prior intent or plan to kill the victim. *Id.* (citing TEX. PENAL CODE ANN. § 6.04(b)(1)).

Applying the doctrine of transferred intent to the present case establishes that the evidence is sufficient to support appellant's conviction for the offense of aggravated sexual assault. Appellant concedes that the evidence is sufficient to establish his guilt for the offense of sexual assault as a party. The evidence establishes that appellant was in the room with Washburn when Washburn sexually assaulted Victim, repeatedly knocked Victim unconscious before and during the assault, and played a role in restraining Victim throughout the assault. This evidence is sufficient to establish that appellant intended to promote or assist Washburn's commission of the offense of sexual assault. Under the theory of transferred intent, appellant is guilty of the greater offense of aggravated sexual assault if it was foreseeable, ordinary, and probable that Victim would suffer serious bodily injury from Washburn's actions. *See id.* The evidence established that appellant was present during Washburn's assault of Victim, which means that appellant witnessed the force used by Washburn. *See Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018) (defendant's culpable mental state may be inferred from the nature and extent of the victim's injuries). Further, appellant repeatedly hit Victim hard enough to knock her

11

unconscious. It is foreseeable, ordinary, and probable that Victim would suffer serious bodily injury as a result of these assaults. The fact that the manner in which Victim suffered serious bodily injury was not from appellant hitting and restraining her does not alter the fact that these actions were reasonably likely to cause Victim serious bodily injury. Consequently, we conclude that the evidence is sufficient to establish that appellant is guilty of the offense of aggravated sexual assault as a party.

We overrule appellant's first issue.

## Issue Two: Consent

By his second issue, appellant contends that the evidence is insufficient to establish the sexual assault under Count III, specifically whether appellant penetrated Victim's mouth without her consent. To establish the elements of the sexual assault alleged in Count III, the State had to prove that appellant intentionally or knowingly caused the penetration of the mouth of Victim with his sexual organ without Victim's consent. *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(B).

Victim testified that appellant penetrated her mouth with his penis three times while she was at appellant's trailer. The evidence also establishes that appellant committed this act intentionally. What appellant challenges is the sufficiency of the evidence regarding whether Victim consented. According to appellant, Victim testified that her first sexual encounter with appellant, which included fellatio, was consensual. His argument relies on Victim's testimony that she had sex with appellant the first time "because he told [her that] he [would] take [her] home [afterward]." Appellant contends that it is possible

12

that Victim performed oral sex on him three times during this first sexual encounter and, because he contends that this first encounter was consensual, the jury could not conclude beyond a reasonable doubt that he sexually assaulted her by penetrating her mouth with his penis without her consent.

Under the Penal Code, a sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force, violence, or coercion. TEX. PENAL CODE ANN. § 22.011(b)(1). In the present case, the evidence established that, prior to appellant's first sexual contact with Victim, he shoved her through the trailer and into a back bedroom while telling her that she could not leave because she owed him for making him lose his job. Appellant then told Victim that he would allow her to leave only if she first had sex with him. Appellant's use of physical force coupled with his refusal to let Victim leave unless she had sex with him is sufficient evidence to allow a rational jury to conclude that appellant coerced Victim to have sex with him the first time. The evidence is clear that all subsequent sexual acts between appellant and Victim were without her consent. Consequently, the evidence supports the rational inference by the jury that Victim never had consensual sex with appellant and, thus, appellant's challenge to the sufficiency of the evidence supporting the jury's decision to find appellant guilty of sexual assault under Count III is without merit.

We overrule appellant's second issue.

Conclusion

Having overruled both of appellant's issues, we affirm the judgment of the trial court.


Judy C. Parker
Justice

Quinn, C. J., concurs in the result.