

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-22-00555-CR, 04-22-00558-CR, 04-22-00559-CR

Martin **MERCADO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2019-CR-9451, 2019-CR-9449, & 2019-CR-9450
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: June 20, 2024

AFFIRMED

Appellant Martin Mercado appeals his evading arrest and attempted capital murder convictions on sufficiency, jury instructions, and jury argument grounds. We affirm.

## BACKGROUND

Around 1:00 a.m. on June 9, 2019, Texas Department of Public Safety Violent Crimes Task Force Troopers Jayme Powers and Daniel Cordes were on patrol together in a neighborhood in northeast San Antonio. Powers drove a Ford Explorer Police Interceptor; Cordes rode in the

passenger seat. When on the task force, the Troopers rode in "two-man units just for the sheer fact of having someone's back" in the "high-risk areas" they patrolled.

Near the intersection of Sierra Sunset and Foster Road, the Troopers saw an older pickup truck with a defective license plate light. Powers turned on the Interceptor's red and blue flashing lights and attempted a traffic stop. Powers could not see who was driving the truck or how many people were in it because it was dark. The driver, later identified as Mercado, pulled to the right slightly as if he were going to stop and then accelerated. Powers activated the Interceptor's siren and followed Mercado, who turned onto the frontage road of Interstate Highway 10 West, ran a red light, and entered IH-10. Mercado drove at speeds of up to a hundred miles an hour.

A few minutes into the chase, the Troopers heard "loud popping noises coming from the pickup truck" and saw "sparks coming off the roadway" and "off the pickup truck as well." At first, they did not know what the sparks were from, but then they "realized that it was gunshots towards our patrol vehicle." There were two separate volleys of shots—the first as they were passing "Houston and Commerce, and then the second volley was . . . when [they] were passing the Martin Luther King Avenue." Cordes "saw what -- it looked like debris or glass falling off the back of the vehicle," "audibly hear[d] shots being fired," and saw the "actual impact of the bullet making a spark off of the blacktop of the interstate." Cordes "was able to count at least 21 rounds" fired.

In response to the shots, Powers applied the brakes but continued to follow Mercado from a further distance. Two other DPS Troopers assigned to the Violent Crimes Task Force, Jesse Perez and Matt Ruiz, "picked up the pursuit on the IH-10 and New Braunfels area." They were also driving a Ford Explorer Police Interceptor. Perez drove and Ruiz rode in the front passenger seat. These Troopers had been waiting on the entrance ramp and joined the chase just ahead of Powers and Cordes. While in pursuit, Perez could not see into the vehicle. He saw that the "rear window

. . . was shattered. It's very hard traveling at these speeds, the reflection from the emergency lights, oncoming traffic, lights from the highway, so it's hard to see." "But at the initial location where [he] observed the vehicle back at IH-10 and Pine, [he] distinctly observed a driver inside of the vehicle." He said the driver "slightly kind of looked over in our direction." Ruiz also noticed "the back window was -- it was broken out, so you could kind of -- can't see in that good, but you could have a visual of the inside, like partially."

Mercado "went across traffic and exited to 37 South." He took the Fair Avenue exit, "took a left disregarding the red light," went "underneath 37 on Fair Avenue," took a right onto the frontage road, reentered IH-37 "up the exit ramp," and continued "southbound in the northbound lanes." Perez and Ruiz followed Mercado up the exit ramp; Powers and Cordes did not. Perez drove on the shoulders and took evasive actions to avoid hitting cars coming towards them. Mercado moved across lanes and from shoulder to shoulder and some vehicles had to veer around him. Mercado exited using the entrance ramp at Pecan Valley and then got back on IH-37 at the next exit ramp, still "going southbound in the northbound lane" around "80 to a hundred miles an hour." Mercado next exited on the Military Drive entrance ramp. Ruiz knew the ramp was "fairly new" and near "unincorporated land"—a good place to disable the truck. Ruiz leaned his upper body out of the passenger window and shot five times at Mercado's rear tires, striking them both. The truck "kind of fishtailed, and then it went off the pavement into the -- into the unincorporated land, the borrow ditch[.]" As the truck fishtailed, Perez fired five shots through the Interceptor's front windshield at the truck.

Mercado left the truck before it stopped moving and ran into the woods. Perez immediately ran after him. Ruiz looked into the truck, found no one else inside, then joined the foot chase. San Antonio Police Department Officer Pedro Carvajal spotted Mercado in a parking lot and pulled in. Mercado made eye contact with him and "immediately threw himself on the ground." He lay prone

with his arms out to his sides where Carvajal could see them. As Carvajal began to handcuff Mercado, Perez arrived, and they finished handcuffing him together. Mercado repeatedly exclaimed that he thought two men were trying to kill him. When Ruiz saw Mercado had been detained, he turned back to secure the Interceptor and examine the truck. He found "a bump stock color rifle" lying on the truck's bench seat.

Texas Ranger Shane Staley swabbed Mercado for gunshot residue. He thought Mercado "was intoxicated in some manner." "Seven characteristic gunshot primer residue particles were confirmed on the GSR kit."

Texas Ranger Terry Snyder, the lead investigator in the case, collected the AR-15-style firearm in the truck and found its safety lever "in the position of fire." The magazine he collected from the truck was empty. He found twenty-five spent cartridge cases in the truck. The tailgate of the truck had both perforating and penetrating bullet holes. Some of the penetrating holes were consistent with Trooper Ruiz shooting towards the rear tires. The truck's rear windshield had such extensive damage that Snyder could not "determine the sequence" of the shots. He found a bullet hole in the plastic trim of the Interceptor driven by Powers. The bullet travelled into the rubber boot behind the front passenger side wheel, spilling grease onto the fender wheel.

A firearms examiner for Bexar County test shot the firearm found in the truck. The cartridge case from the test fire had the same "flash characteristics" and "markings" as the cartridge cases found in the truck.

In three indictments, the State charged Mercado with two counts of attempted capital murder of a peace officer, two counts of aggravated assault of a public servant, and one count of evading arrest in a vehicle. The State alleged two enhancements on each indictment.

At trial, the jury heard from, inter alia, Troopers Powers, Cordes, Perez, and Ruiz, Rangers Staley and Snyder, Officer Carvajal, and a civilian eyewitness, Dustin McKinley. McKinley had

been driving his tow truck west on IH-10 when he noticed police lights in his rear-view mirror. He pulled over to the right lane. He did not know "who [the officer] was chasing" but then he saw a truck come through in the middle lane and saw two flashes and heard gunshots going "back this way towards the cop[.]" McKinley said he "couldn't see inside the vehicle, so [he didn't] know how many people were in there." He was at "the exit of MLK so [he] just jumped over, rather quickly" to avoid being in the line of fire. In addition, the jury saw dash-cam and body-cam video of the chase and arrest.

The jury charge contained mistake of fact instructions applied to the indicted counts and a necessity instruction applied to lesser-included aggravated assault counts. The jury returned guilty verdicts on all five indicted counts and the trial court entered judgments on three: the two attempted capital murder of a peace officer counts and the single evading count. Mercado pled true to enhancement paragraphs, and the trial court sentenced him to life imprisonment on the attempted capital murder of a peace officer counts and to thirty years imprisonment on the evading account, with the sentences to run concurrently. Mercado appeals.

**ANALYSIS**

*Sufficiency*

In his first issue, Mercado argues the evidence is insufficient to support the attempted capital murder of Trooper Cordes because the record contains no evidence from which a jury could rationally find that Mercado intended to kill him.

*Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine

whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal quotation marks and emphasis omitted). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

"By its nature, a culpable mental state must generally be inferred from the circumstances." *Romano v. State*, 610 S.W.3d 30, 35 (Tex. Crim. App. 2020). "We cannot read an accused's mind, and absent a confession, we must infer his mental state from his acts, words and conduct." *Id*. In determining the sufficiency of the evidence to show an actor's intent, and faced with a record that supports conflicting inferences, we presume the trier of fact resolved any conflict in favor of the verdict it rendered, and we defer to that resolution. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

*Application*

To convict Mercado for the attempted capital murder of Cordes, the State was required to prove that Mercado, with the specific intent to cause Cordes's death, and while knowing that Cordes was a peace officer acting in the lawful discharge of an official duty, shot a firearm at or in the direction of Cordes, and that act amounted to more than mere preparation that tended but failed to effect the commission of the offense. *See* TEX. PENAL CODE ANN. §§ 15.01(a) (criminal attempt); 19.02(b)(1) (murder), 19.03(a)(1) (capital murder). *See United States v. Hansen*, 599 U.S. 762, 774–75 (2023) (in criminal prohibition, attempt means taking substantial step toward

completion of crime with requisite mens rea). The "specific intent to kill is a necessary element of attempted murder." *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. 1984) (op. on reh'g). "The specific intent to kill may be inferred from the use of a deadly weapon . . . unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result." *Id*. at 744 (internal citation omitted).

Mercado argues the evidence is insufficient to support *any attempted murder conviction whatsoever*, because his "only conscious objective or desire was to flee from the danger that he immediately perceived – whatever its source." He also contends that the evidence is insufficient to support any *attempted capital murder of a peace officer conviction*, because he "quickly admitted he fired at the partially darkened vehicle that aggressively approached his pickup" after two "men in a dark colored PT-Cruiser had just robbed him." But he simultaneously concedes "shooting at a moving patrol unit may well suffice to show a specific intent to kill whichever peace officer happens to be driving that unit" and asks only that we vacate the conviction for the attempted capital murder of Cordes, because there is no evidence that he knew a second Trooper was in the Interceptor. The State asserts the evidence supports a conclusion that Mercado was aware of the presence of both Troopers because the chase was long, the vehicles were close together, and the lighting was good.

We agree with Mercado that some evidence tends to indicate that he could not see that there were two Troopers inside the Interceptor he shot at. Powers, Cordes, and McKinley all testified that they could not see who was driving the truck or shooting the firearm or how many people were inside the truck. Only Perez—driving the Interceptor that was not shot at—said he had "a clear view" of the driver of the truck, and that was because he and Ruiz were waiting to join the pursuit in an elevated grassy area, with lights activated, knowing what direction the truck was coming from. Still, when asked by the State if he could see into the vehicle during the chase,

Perez replied, "It's very hard traveling at these speeds, the reflection from the emergency lights, oncoming traffic, lights from the highway, so it's hard to see." We have also reviewed the video recordings of the chase, and they do not appear to support a finding that Mercado could see into the Interceptor.

However, regardless of whether Mercado could see into the first Interceptor, his acts, words, and conduct support a reasonable inference that he had the intent to kill anyone in it. *Romano*, 610 S.W.3d at 35. Specifically, Mercado fired twenty-five rounds from a semi-automatic rifle. *See Manrique v. State*, 994 S.W.2d 640, 642–43 (Tex. Crim. App. 1999) (act of firing twenty-six shots from AK–47 assault rifle into residence satisfies culpable mental state element of attempted murder offenses because it is "reasonable to conclude that more than one unknown person could have been the objects of these murderous acts"); *Trevino v. State*, 228 S.W.3d 729, 738 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd) ("[T]he jury could reasonably infer that by opening fire with a semi-automatic weapon on an occupied vehicle, Trevino specifically intended to kill either or both of the occupants of the vehicle."). Even if Mercado's bullets were first and foremost intended for the Trooper driving the Interceptor, the scope of the barrage could lead a reasonable juror to conclude that Mercado had a concurrent intent to kill anyone in the driver's vicinity, including another Trooper. *Manrique*, 994 S.W.2d at 642–43; *see also id.* at 648 (McCormick, P.J., concurring) (act of firing twenty-six shots from AK–47 assault rifle into residence at 4:00 a.m. satisfies culpable mental state element of attempted murder offenses because such "evidence supports a finding or theory that appellant knowingly attempted to injure or harm anyone in the house"). One round Mercado fired entered the Interceptor's front bumper on the passenger side and penetrated the wheel well. *See Flanagan*, 675 S.W.2d at 744–45 (finding evidence of intent to kill sufficient in attempted murder case where defendant leaned out of car window and fired shotgun at driver of pickup traveling fifty feet behind his car); *Adanandus v.*

*State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) (jury may infer intent to kill from use of deadly weapon in deadly manner). In addition, when he was arrested, Mercado attempted to explain that he was shooting at *two* men who had just tried to rob him. *See Romano*, 610 S.W.3d at 35 (accused's words can raise inference of requisite intent); *Murphy v. State*, 229 S.W.3d 334, 342 (Tex. App.—Amarillo 2006, pet. ref'd) (jury not compelled to believe any specific part of statement made to police); *Coleman v. State*, 832 S.W.2d 409, 414 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) ("[A] jury need not attach equal credit to all parts of a confession; it may accept one portion as true and reject the rest.").

When considered in the light most favorable to the verdict, as the standard of review requires us to do, we conclude the evidence supports a reasonable inference that Mercado had the intent to kill anyone in the Interceptor. We therefore overrule Mercado's sufficiency complaint.

### *Mistake of Fact and Necessity Instructions*

In his second issue, Mercado argues the trial court erred by refusing to apply the requested mistake of fact and necessity instructions to every offense included in the charge.

### *Applicable Law and Standard of Review*

The trial court must provide the jury with a written charge "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. Article 36.14 "requires the trial judge to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence." *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007); TEX. PENAL CODE ANN. § 2.03(c). A defense is raised "if there is evidence in the record making a prima facie case for the defense." *Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007) (prima facie case is minimum quantum of evidence necessary to support rational inference that an allegation of fact is true). "If the issue of the existence of a defense is submitted to the jury,

the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." TEX. PENAL CODE § 2.03(d).

Mistake of fact is a general defense to criminal responsibility. TEX. PENAL CODE ANN. § 8.02(a). "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." *Id*. "Unlike many other statutory defenses, mistake of fact negates an element of the offense: the culpable mental state." George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43:36 (3d ed. 2011).

Necessity is a justification defense excluding criminal responsibility. TEX. PENAL CODE ANN. § 9.22. Conduct is justified under the defense if: "(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear." *Id*. "To be entitled to a defensive instruction for necessity, a defendant must put on evidence that essentially admits to every element of the offense, including the culpable mental state." *Maciel v. State*, 631 S.W.3d 720, 723 (Tex. Crim. App. 2021) (internal quotation marks omitted). "In other words, a defendant cannot both invoke necessity and flatly deny the charged conduct." *Id*.

In reviewing a trial court's decision not to include an instruction on a defensive issue in the jury charge, we view the evidence in the light most favorable to the defendant's requested instruction. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). "[I]f the trial judge does charge on a defensive issue (regardless of whether he does so sua sponte or upon a party's request), but fails to do so correctly, this is charge error subject to review under *Almanza*." *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). "If there was an objection, reversal is required if

the accused suffered 'some harm' from the error." *Id*. "If no proper objection was made at trial, a reversal is required only if the error caused 'egregious harm.'" *Id*.

*Application*

At the charge conference, Mercado asked for a mistake of fact instruction based on his statements captured on dash-cam and body-cam recordings:

> basically saying, I didn't know it was police officers. I thought it was these two guys that robbed me. That's who I was fleeing from. I was afraid for my life. And then by the time – I didn't stop because after I shot is when I saw it was cops and it was too late at that point.

In response, the State requested that the trial court add lesser-included offenses of aggravated assault without "the public servant aspect of it."

Mercado also asked for a necessity instruction, based on:

> a similar argument . . . where he says people were going to kill him, he was scared, and so I think those are statements of admission. . . . [T]hen I think when you look at, you know, is it conduct immediately necessary to avoid imminent harm. I think if you thought that people were trying to kill you, I think it sort of addresses his actions, and I believe it's appropriate.

Mercado requested the necessity instruction for all counts. The State objected and argued the narrower justification of self-defense, not the broader justification of necessity, was applicable. The State alternatively argued that a necessity instruction would not be appropriate because Mercado had not admitted to both the act and the mental state.

The trial court applied a mistake of fact—but not a necessity—instruction to the counts requiring knowledge of peace officer or public service status: the two attempted capital murder of a peace officer counts, the two aggravated assault of a public servant counts, and the single evading detention count. The trial court applied a necessity—but not a mistake of fact—instruction to the counts not requiring such knowledge: the two lesser-included aggravated assault counts. We conclude the trial court did not err in limiting: (1) the mistake of fact instructions to the counts

requiring knowledge of peace officer or public service status; and (2) the necessity instructions to the counts not requiring such knowledge.

First, Mercado was not entitled to necessity instructions on the attempt counts that required some evidence that he acted with intent to flee, assault, or kill persons he knew to be peace officers or public servants. TEX. PENAL CODE ANN. §§ 19.03(a)(1), 22.02(a)(2), 38.04(a). In the recorded statements, Mercado denied that he knew the people he was shooting at were peace officers—he stated he did not know he had shot at or fled authorities until after the fact. Since Mercado flatly denied the mental intent element of attempted capital murder of a peace officer, aggravated assault of a public servant, or evading detention by a peace officer, Mercado was not entitled to necessity instructions on them. *Maciel*, 631 S.W.3d at 723.

Second, Mercado was not entitled to mistake of fact instructions on the attempt counts that did not require such intent. TEX. PENAL CODE § 22.02(a)(2). "Section 22.02(a) incorporates a culpable mental state only insofar as one is required to prove the aggravated-assault 'element' of simple assault." *Rodriguez v. State*, 538 S.W.3d 623, 628 (Tex. Crim. App. 2018). "[T]o be 'entitled' to a mistake-of-fact instruction, a defendant must always establish that, 'through mistake,' he 'formed a reasonable belief about a matter of fact' such that 'his mistaken belief negated the kind of culpability required for commission of the offense.'" *Id*. (quoting TEX. PENAL CODE § 8.02(a)). Mercado's mistaken belief about the identities of the men he shot at did not negate the culpability required for simple assault, so such an instruction would be contrary to section 8.02. *See id*.

In short, had the jury believed Mercado did not know he was firing at or evading peace officers or public servants, it would have found him not guilty of all counts requiring that knowledge and turned to the aggravated assault counts. And if the jury had further believed that Mercado's aggravated assaults were justified by necessity, it would have found him not guilty of

the counts not requiring that knowledge. Accordingly, even when we view the evidence in the light most favorable to the requested instructions, we cannot say the trial court erred by concluding Mercado was not entitled to those instructions on each count. *See Chase v. State*, 666 S.W.3d 832, 836 (Tex. App.—Tyler 2023, pet. ref'd) (no abuse of discretion to charge on self-defense but not necessity when defendant sought to justify same action to avoid same harm under either defense). We therefore overrule Mercado's second issue.

### *Trial Court Sustained State's Objection To Mercado's Closing Argument*

In his third issue, Mercado argues that the trial court erred by sustaining the State's objection to his argument about the State's burden of proof.

#### *Applicable Law*

"[P]roper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement." *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019). "[A] fifth area—long recognized as proper for jury argument, but not usually included in the laundry list . . . [is] the trial court's charge to the jury." *Bessey v. State*, 199 S.W.3d 546, 554 (Tex. App.—Texarkana 2006), *aff'd,* 239 S.W.3d 809 (Tex. Crim. App. 2007); *see, e.g.*, *Daywood v. State*, 248 S.W.2d 479, 484 (Tex. Crim. App. 1952) ("Error in argument does not lie in going beyond the court's charge, but lies in stating law contrary to the same."). Argument that misstates the law or is contrary to the court's charge is improper. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990). A trial court's error in ruling on a party's misstatement-of-the-law objection to jury argument is non-constitutional in nature. *Id*. at 48–49 (remanding for application of harmless error analysis).

*Application*

Mercado argues the trial court erred by sustaining the State's frivolous objection to his closing argument, and thereby improperly commented on—and diluted—the State's burden to disprove his defenses beyond a reasonable doubt.

> Mercado: . . . And so when we look at the charge, just remember, it's always the State's burden to prove it beyond a reasonable doubt. If you're ever unsure or if you have a reasonable doubt of anything, whether or not a defense applies, or whether or not they convinced you of something, then it's always not guilty. Because the State always has the burden on proving things, and they have the burden on proving –
>
> State: I'm going to object –
>
> Mercado: -- that defenses don't apply –
>
> State: I'm going to object, at this point, to a misstatement of the law. The State has the burden of proving the elements beyond a reasonable doubt, and also disproving the defenses, but not the -- not the standard that defense counsel just said to the jury.
>
> Court: Sustained.

The State argues it made that objection because the defense has the burden of production on defenses. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (defendant bears burden to produce evidence raising defense; State bears burden to disprove defense). Because the State is technically correct that the State does not *always* bear the burden and the trial court could have understood the State's objection to refer to the defense's burden of production, we cannot say that the trial court erred in sustaining the objection. *Cf.*, *Whiting*, 797 S.W.2d at 47–48 (State argued repeatedly that its only burden was to prove elements of offense as set out in information though it also had burden of persuasion to disprove self-defense).

This subtlety—that the State does not have the burden of production on a defense even though it must disprove a defense beyond a reasonable doubt—may not have been understood by the jury and is not particularly relevant because whether the defense met its burden of production

- 14 -

is a question for the trial court, not the jury. *See Shaw*, 243 S.W.3d at 657–58 (decision whether defendant satisfied burden of production of defense is question of law for trial court). Regardless, the defense immediately restated the burden without reference to "always," and the State did not object. And it is undisputed that the jury charge set out the correct burden on the State. We therefore overrule Mercado's third issue.

### Trial Court Overruled Mercado's Objection to State's Closing Argument

In his last issue, Mercado argues the trial court erred by overruling his objection to the State's argument that he "can be guilty of both attempted capital murder and aggravated assault of a public servant. Legally, he can be guilty of both." Mercado objected that the argument was a misstatement of law: "As a lesser-included offense, that's double jeopardy. He literally cannot be found guilty under both." The trial court overruled the objection. As a matter of constitutional law, the trial court did not err.

The Fifth Amendment guarantee against double jeopardy consists of three separate constitutional protections. *Lopez v. State*, 108 S.W.3d 293, 295–96 (Tex. Crim. App. 2003). "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (internal quotation marks omitted). But the Supreme Court has explained that the State may file a charging instrument including counts that involve offenses that are the same for double-jeopardy purposes "even though the defendant could not in the end stand convicted of both offenses." *Ball v. United States*, 470 U.S. 856, 860 n.8 (1985); *see also id.* at 865 ("If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses."); *Evans v. State*, 299 S.W.3d

138, 141 (Tex. Crim. App. 2009) (same). Here, in keeping with *Ball*, the trial court overruled Mercado's objection, and when the jury convicted Mercado of two offenses that were the same for double jeopardy purposes, the trial court entered judgment on only one. We therefore overrule Mercado's final issue on appeal.

## CONCLUSION

Having overruled each of Mercado's complaints, we affirm the trial court's judgments.

Beth Watkins, Justice

DO NOT PUBLISH